## UNITED STATES of America

v.

## COMMONWEALTH AUTO SALES, INC., et al.

**Crim. Nos. 77–131–1–77–131–3.**

United States District Court,
M. D. Pennsylvania.

Feb. 10, 1978.

Amendments were signed by the President. Presently before the court is defendants' motion to dismiss the indictment.[1]

Title IV, § 412 of the 1972 Act provided that "[t]his *title* . . . shall take effect ninety calendar days following the date of enactment of this Act." Pub.L.No.92–513, § 412, 86 Stat. 961 [emphasis added]. Title IV as enacted provided civil remedies only. *See* 15 U.S.C.A. §§ 1981–91 (1974). However, as already mentioned, the 1976 Amendments added new sections with criminal penalties. And, in addition, § 408 of the 1976 Amendments provided that: "Title IV . . . is amended by—(1) redesignating section [] . . . 412 . . . as sections 418, 419 . . . ; and (2) [by] inserting immediately" thereafter, the new sections. Pub.L.No.94–364, § 408, 90 Stat. 984.

Defendants argue that, by "redesignating" § 412 of the 1972 Act with its 90-day provision as § 419, Congress delayed the effective date of the criminal sanctions until 90 days after the 1976 Amendments were signed into law July 14, 1976. Consequently, defendants contend, the indictment charging violations between July 16 and August 25, 1976, must be dismissed because there were no criminal sanctions in effect at that time. Under defendants' theory criminal sanctions came into effect in mid-October 1976. This argument, while ingenious, must be rejected.

■ As defendants properly observe in their brief, "the general rule is that, in the absence of an express effective date provision, an act of Congress takes effect on the date of its enactment." Defendants' Memorandum in Support of Motion to Dismiss the Indictment at 6 (filed Dec. 27, 1977). *Cf. United States v. Casson*, 140 U.S.App. D.C. 141, 144–45, 434 F.2d 415, 418–19 (1970). Thus, the issue is whether the 1976 Amendments contain an express provision delaying their effectiveness until 90 days after the President signed the law.[2] Be-

Sal D. M. Cognetti, Jr., Asst. U. S. Atty., Scranton, Pa., for plaintiff.

John Barry Beemer, Scranton, Pa., for defendants.

## MEMORANDUM

NEALON, Chief Judge.

Commonwealth Auto Sales, Inc. and two individuals are charged in this 16-count indictment with violating the Motor Vehicle Information and Cost Savings Act of 1972 (the "1972 Act"), as amended by the Motor Vehicle Information and Cost Savings Act Amendments of 1976 (the "1976 Amendments"). *See* 15 U.S.C. §§ 1984, 1988(b) and 1990c (Supp.1977). The 1976 Amendments added criminal penalties to the civil remedies already provided. The indictment charges criminal violations occurring within a period of two to 42 days after the 1976

---

1. The motion became ripe on January 26, 1978, when defendants opted not to file a reply brief.

2. Not surprisingly, counsel for both sides have been unable to cite to the court a case directly

cause there is no such express provision, the 1976 Amendments took effect July 14, 1976, rather than in mid-October.

First, the language of § 412 of the 1972 Act delayed the effective date of the act's *title.* The 1976 Amendments, which made some changes in Title IV and redesignated § 412, nevertheless do not constitute the "title" of the original act. Had Congress desired to expressly delay the effective date of the 1976 Amendments, a further alteration of § 412 could have been made by providing in § 412 that the "title *and its amendments*" would become effective 90 days after enactment. *See* Letter from Joseph J. Levin, Jr., Chief Counsel of the National Highway Traffic Safety Administration of the United States Department of Transportation to Robert Katzenstein, Consumer Affairs Section of the United States Department of Justice (Jan. 6, 1978) *accompanying* Government's Memorandum in Opposition to Motion to Dismiss Indictment (filed Jan. 19, 1978).[3]

Instead, Congress merely redesignated § 412, renumbering it as § 419. This renumbering was apparently prompted by a desire to put new, more important sections in an earlier position within Title IV, and to keep the more technical sections at the end. It is arguable that this redesignation did not constitute re-enactment, and that the 1976 Amendments altered only the section number of the 1972 Act without renewing its applicability. However, even if the redesignation had the effect of re-enactment, such a re-enactment neither would be unusual nor would require applying the 90-day delay to the amendments. *See Yahn & McDonnell v. Board of Finance,* 68 Dauph. 79, 5 Pa.D. & C.2d 183 (1955). In *Yahn & McDonnell,* the court stated that, although the section in the original act with an effective date had been re-enacted every other year from 1937 to 1947, the effective date of the original act applied only in 1935, the first year.[4]

 Finally, defendants argue that the purported ambiguity in the effective date of the 1976 Amendments should be resolved by finding the 90-day provision applicable. While laws must be sufficiently definite with regard to the conduct that they proscribe, *see, e. g., Papachristou v. City of Jacksonville,* 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972), as already discussed, statutes are presumed effective on their date of enactment unless a delay in an effective date is made express. Were the court to find an ambiguity in the effective date of the 1976 Amendments, that ambiguity would be resolved by finding no delay. Moreover, the relevant substantive provisions of Title IV, i. e. the conduct proscribed, were already in effect when the 1976 Amendments were signed and the acts in the indictment were allegedly committed. The Amendments only added criminal penalties, and a delay in the effective date for a change in a criminal penalty is not required. *Cf. Casson,* 140 U.S.App.D.C. at 148, 434 F.2d at 422 (statute effective in afternoon applied to burglary committed evening of same day).

The motion to dismiss the indictment will be denied.

---

on point. Neither does the legislative history of the 1976 Amendments address this question.

**3.** The interpretation of the agency charged with a law's administration is entitled to "great deference" in a matter of statutory construction.

*Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 13 L.Ed.2d 616 (1975).

**4.** *Yahn & McDonnell* relies in part on a statutory rule of construction. *See* 1 Pa.Cons.Stat. § 1961 (1975).