639 P.2d 1181

STATE of New Mexico, ex rel. Karen VALLES, Petitioner,

v.

Hon. John E. BROWN, District Judge, Children's Court Division, Second Judicial District, State of New Mexico, Respondent.

Ronald Dean MILLER, Petitioner,

v.

Hon. Jack L. LOVE, Respondent.

Nos. 13784, 13707.

Supreme Court of New Mexico.

Dec. 18, 1981.

Linda E. Wingfield, Albuquerque, for Petitioner Valles.

M. E. Occhialino, Albuquerque, for petitioner Valles.

Michael Alarid, Albuquerque, for respondent Brown and Real Party in Interest.

Kirk & Williams, David N. Williams, Albuquerque, for petitioner Miller.

James C. Ellis, Albuquerque, for respondent Love and Real Party in Interest.

## OPINION

EASLEY, Chief Justice.

Two alternative writ prohibition cases are before us, requesting our interpretation of the Parental Kidnapping Prevention Act of 1980 (PKPA), 28 U.S.C.A. § 1738A (Spec. Pamp.1981). The issues raised in these cases are not only similar but also are of great national and state importance, so we have consolidated them. In *Miller v. Love*, Mrs. Miller sought recognition of an Arizona child custody decree in New Mexico. The New Mexico court granted full faith and credit to the Arizona decree and subsequently Mr. Miller petitioned this Court for an alternative writ of prohibition which we granted. The second case, *Valles v. Brown*, concerned whether a New Mexico court may modify a Washington child custody decree. The New Mexico court held that it could, and thus Mrs. Valles petitioned this Court for an alternative writ of prohibition which we granted. We make permanent both alternative writs of prohibition.

We discuss:

1. Whether the effective date of the PKPA is December 28, 1980 or July 1, 1981.

2. Whether the Arizona child custody decree met the jurisdictional requirements of the PKPA and is therefore entitled to full faith and credit.

3. Whether a New Mexico court may modify a Washington child custody decree under the PKPA when the Washington court is willing and able to hear the petition.

*Miller v. Love*

Deborah Miller married Ronald Miller on June 15, 1974 in Arizona. Shortly after the date of their marriage, they moved to New Mexico. There are two children born of the marriage: one is now six years old; the other is now two years old.

As a result of family discord, Mrs. Miller moved back to Arizona with the two children. The children remained in Arizona from November 1, 1980 to December 25, 1980, the date Mr. Miller came and took the children back to New Mexico without her consent. The children presently live in New Mexico.

Mr. Miller filed for divorce and custody of the children in Bernalillo District Court on January 9, 1981. Mrs. Miller was not served with process. On February 27, 1981, Mrs. Miller filed for divorce and custody in Arizona. Mr. Miller was served with process, but he did not file an answer or make a special appearance. The Arizona court granted the divorce and awarded custody of the children to Mrs. Miller. The Arizona court further found that the children were "unlawfully removed" from Arizona and ordered their return to Mrs. Miller.

Armed with the Arizona decree, Mrs. Miller's counsel entered a "special appearance", contesting jurisdiction of the New Mexico trial court to act on the divorce and custody petition, requesting full faith and credit of the Arizona divorce and custody decree, and seeking enforcement of the Arizona decree. The New Mexico trial court granted full faith and credit to the Arizona decree and awarded the children to Mrs. Miller.

*Valles v. Brown*

Karen and Carl Valles were divorced in 1979 in Washington. The Washington court awarded custody of Shawna Valles, now four years old, to Mrs. Valles and granted visitation rights to Mr. Valles.

In 1979, Mr. Valles left Washington and moved to New Mexico. Mrs. Valles and Shawna continued to reside in Washington until August and then moved to New York so that she could attend beauty school. Mrs. Valles continued her domicile in Washington.

In January 1981, Mr. Valles called Mrs. Valles, asking if Shawna could come and visit him in New Mexico. She told Mr. Valles that Shawna was in Washington with her parents, and it was fine with her to take the child to New Mexico, which he did. Shortly thereafter, Mr. Valles petitioned the New Mexico court for a change in custody, alleging a substantial change of circumstances. The trial judge, relying on a provision in the Washington decree which stated that the court could modify the custody decree when Mrs. Valles could no longer care for Shawna, denied Mrs. Valles' motion to grant full faith and credit to the Washington decree.

*Effective Date*

A preliminary matter we must dispose of is whether the PKPA became effective December 28, 1980 (the enactment date) or July 1, 1981. Section 2 states: "The amendments made by this Act shall take effect on, and apply to services furnished on or after July 1, 1981." Parental Kidnapping Prevention Act of 1980, Pub.L.No.96–611, § 2, 94 Stat. 3566 (1980). It would seem, at first glance, that this provision is dispositive of the issue.

However, we think not for the following reasons: First, Sections 1 through 5, inclusive, and Section 11 of the "Act" have nothing to do with the substantive law of PKPA. They are technical amendments to the Social Security Act. 42 U.S.C. §§ 301 through 1397 (1976 and Supp. III 1979).

Secondly, the structure of the "Act" clearly indicates that the PKPA is separate and distinct. The short title of the PKPA appears at Section 6 of the "Act", and the short title is an indicator of the beginning part of legislation. *See* 1A Sands, Sutherland's Statutes and Statutory Construction §§ 20.02, 20.10 (4th rev. ed. 1972).

■ Thirdly, Section 10 of the "Act" requires the Attorney General of the United States to report to Congress 120 days after the enactment date of the PKPA on the steps taken to enforce it. To say that the PKPA became effective on July 1, 1981 is to ignore the Congressional requirements placed on the Attorney General. We will not give statutes a literal interpretation which would lead to absurd results, *State v. Nance*, 77 N.M. 39, 419 P.2d 242 (1966), *cert. denied*, 386 U.S. 1039, 87 S.Ct. 1495, 18 L.Ed.2d 605 (1967), when the statute "can be given a reasonable application consistent with their words and legislative purpose." *Haggar Co. v. Helvering*, 308 U.S. 389, 394, 60 S.Ct. 337, 339, 84 L.Ed. 340 (1940).

■ Therefore, we reject the July 1, 1981 date as when the statute became effective. Since the PKPA does not have an express effective date, the enactment date becomes the effective date. *Robertson v. Bradbury*, 132 U.S. 491, 10 S.Ct. 158, 33 L.Ed. 405 (1889); *United States v. Commonwealth Auto Sales, Inc.*, 463 F.Supp. 12 (M.D.Pa. 1978); *see Lapeyre v. United States*, 84 U.S. (17 Wall.) 191, 21 L.Ed. 606 (1872).

We note that the New Mexico Uniform Child Custody Jurisdiction Act, §§ 40–10–1 through 40–10–24, N.M.S.A.1978 (Cum. Supp.1981), does not apply to the two cases before us. It became effective on July 1, 1981. 1981 N.M.Laws ch. 119 § 26. The cases arose before July 1, 1981.

*Background of PKPA*

■ The underlying policy behind the PKPA is to deter, if not prevent, "child snatching". Senator Mathias said:

The problem of child snatching is greater today than ever before. More than 10 million children under the age of 18 live in families headed by a single parent. Although accurate figures are not available, it is estimated that between 25,000 and 100,000 children are victims of interstate child snatchings each year.

*Parental Kidnapping Prevention Act of 1979, S. 105: Joint Hearing Before the Subcomm. on Criminal Justice of the Comm. on Child and Human Development of the Comm. on Labor and Human Resources, 96th Cong., 2d Sess. 1 (1980).*

**330**

"Child-snatching" is expensive. A parent may spend $10,000 to $15,000 per year on detective and legal fees in an attempt to locate the kidnapped child. *Id.* at 79. Sadly to say, most of these parents will not find their children. *Id.*

In addition to and more important than the expense is the psychological damage to the child. A child psychologist, who testified before the Senate Subcommittee, said that these snatched children suffer psychological damage which is often severe and sometimes irreversible and irreparable. *Id.* at 116.

█ The PKPA is intended to eliminate this harm by requiring states to give full faith and credit to custody decrees. *See generally* S. Katz, Child Snatching: A Legal Response to Abduction of Children 15, 122 (1981).

*Modification of an Out-of-State Decree*

According to the PKPA, a New Mexico court may *only* modify a child custody decree issued in another state when:

1. New Mexico has jurisdiction under its own law, 28 U.S.C.A. § 1738A(c)(1) (Spec. Pamp.1981), and under the PKPA, 28 U.S.C.A. §§ 1738A(c)(2)(A) through 1738A(c)(2)(E) (Spec.Pamp.1981); 28 U.S.C.A. § 1738A(f)(1) (Spec.Pamp.1981) *and*

2. The state which issued the child custody decree no longer has jurisdiction under the PKPA and its own law, 28 U.S.C.A. § 1738A(c) (Spec.Pamp.1981), *or* has declined to exercise jurisdiction to modify the decree. 28 U.S.C.A. § 1738A(f)(2) (Spec. Pamp.1981).

█ Thus, the long line of New Mexico cases which permits a New Mexico court to modify an out-of-state issued child custody decree based solely on the physical presence of the child and a substantial change of circumstances is pre-empted by the PKPA. U.S.Const. art. 6, cl. 2; *See Gibbons v. Ogden*, 22 U.S. (9 Wheat.) 1, 6 L.Ed. 23 (1824).

*Application of PKPA to Miller v. Love*

█ In order for New Mexico to modify the Arizona decree, New Mexico must have jurisdiction under its own law, 28 U.S.C.A. § 1738A(c)(1) (Spec.Pamp.1981) and under the PKPA, 28 U.S.C.A. §§ 1738A(c)(2)(A) through 1738A(c)(2)(E) (Spec.Pamp.1981). In addition, Arizona must no longer have jurisdiction under its own law and under the PKPA, 28 U.S.C.A. § 1738A(c) (Spec. Pamp.1981), or has declined to exercise jurisdiction. 28 U.S.C.A. § 1738A(f)(2) (Spec. Pamp.1981).

We first inquire whether the Arizona court satisfied any one of the five enumerated jurisdictional requirements under the PKPA. For if it did not, then the decree was not entitled to full faith and credit. We paraphrase the requirements to fit our facts:

1. *Arizona is the "home" state of the children because they have lived there for six months, or (a) Arizona has been the "home" state of the children within six months before Mrs. Miller filed for the custody petition and (b) the children are absent from Arizona because they were taken from the jurisdiction without consent.* 28 U.S. C.A. § 1738A(c)(2)(A) (Spec.Pamp.1981).

This is clearly not the case before us. The children lived in Arizona for one month and have not satisfied the six months requirement.

2. *No other state than Arizona is the children's "home" state, and it is in the best interests of the children that Arizona assume jurisdiction because there are significant connections between Arizona and Mrs. Miller or the children other than mere physical presence. Furthermore, substantial evidence concerning the children's present or future care, protection, training and personal relationships is available in Arizona.* 28 U.S.C.A. § 1738A(c)(2)(B) (Spec.Pamp. 1981).

The record before us does not support the view that Arizona has substantial evidence regarding the children's welfare. Indeed, the record supports the conclusion that New Mexico has this information. After all, the children have resided here for their entire lives except for the one month in Arizona. Thus, this jurisdictional basis does not apply.

3. *The children are physically present in Arizona and either have been abandoned or it is necessary in an emergency to protect the children because they are subjected or threatened with mistreatment or abuse.* 28 U.S.C.A. § 1738A(c)(2)(C) (Spec.Pamp. 1981). ·

This provision does not apply; the children are in New Mexico.

4. *No other state than Arizona would have jurisdiction under the PKPA or New Mexico has declined to exercise jurisdiction because Arizona is the more appropriate forum to hear the matter, and it is in the children's best interests that Arizona assume jurisdiction.* 28 U.S.C.A. § 1738A(c)(2)(D) (Spec.Pamp.1981).

New Mexico would have jurisdiction under the "home" state and the significant relationship provisions. 28 U.S.C.A. §§ 1738A(c)(2)(A), (B) (Spec.Pamp.1981); *see* number 1 and 2 above. There is no evidence in the record to support a finding that it would be in the children's best interests for Arizona to assume jurisdiction.

5. *Arizona has continuing jurisdiction over the child custody decree and the custody determination complied with the four provisions mentioned above and Arizona remains the residence for Mrs. Miller, the children, or Mr. Miller.* 28 U.S.C.A. § 1738A(c)(2)(E) (Spec.Pamp.1981).

Arizona did not comply with any of the four provisions of the PKPA, for the reasons stated above, and this provision does not apply.

We conclude that the Arizona decree did not satisfy any one of the five jurisdictional grounds, and therefore the Arizona custody decree is not entitled to full faith and credit.

█ A source of some confusion in this case is whether Mrs. Miller has subjected herself to the jurisdiction of New Mexico courts. Mrs. Miller's counsel filed a motion to specially appear in order to challenge the subject matter jurisdiction of the Bernalillo District Court. He sought full faith and credit and enforcement of the Arizona decree.

The Court in *State ex rel. v. Huller*, 23 N.M. 306, 330, 168 P. 528, 535 (1917) discussed the difference between a general and a special appearance, stating:

Whether the appearance is general or special is governed by the purpose and object of the appearance. If the appearance be for the purpose of objecting to the jurisdiction of the court and *is confined solely to the question of jurisdiction, then the appearance is special, but any action upon the part of the defendant, except to object to the jurisdiction which recognizes the case in court will amount to a general appearance.* [quoting *Dailey v. Foster*, 17 N.M. 377, 128 P. 71 and emphasis added].

Thus, a special appearance is limited to challenging the jurisdiction of the court. "Jurisdiction of the subject matter is the power to hear and determine the issues in a case. [Citation omitted.] Jurisdiction of the person is acquired when one is personally served with process." *Ballew v. Denson*, 63 N.M. 370, 373, 320 P.2d 382, 383 (1958). In this case, counsel for Mrs. Miller not only challenged the jurisdiction of the court but also requested enforcement of the Arizona decree. By requesting enforcement, this exceeded the challenge of jurisdiction, and consequently, counsel made a general appearance.

We therefore reverse and remand the case to the trial court for determination of whether New Mexico has jurisdiction under its own laws and under the PKPA to issue a child custody decree, and if it does, to address the merits of the case.

*Application of PKPA to Valles v. Brown*

For our trial court to have authority to modify the Washington decree, the PKPA first mandates that our court have jurisdiction under our own law and under the PKPA. Secondly, the PKPA specifies that our court has no power to modify the decree unless the other state's court no longer has jurisdiction or has declined to exercise jurisdiction. It is this second proviso that controls this case.

332

A state maintains jurisdiction over a child custody decree when it has jurisdiction under its own laws, 28 U.S.C.A. § 1738A(c)(1) (Spec.Pamp.1981) *and* satisfies any one of the five jurisdictional requirements, 28 U.S.C.A. § 1738A(c)(2) (Spec.Pamp.1981).

For the purposes of this case, Section 1738A(c)(2)(B) of Title 28 is applicable. A paraphrase of that provision reads: No other state than Washington is the child's "home" state and it is in the best interests of the child that Washington assume jurisdiction because there are significant connections between Washington and Mrs. Valles or the child other than mere physical presence. Furthermore, Washington has available substantial evidence concerning the child's present or future care, protection, training and personal relationships.

The record before us reflects: The child has spent most of her life in Washington. Most of the people who have cared for or have known the child live in Washington. Mrs. Valles is a domiciliary of Washington and so is the child. *Hoefer v. Hoefer*, 67 N.M. 180, 353 P.2d 1066 (1960); Annot., 13 A.L.R.2d 306 (1950); 25 Am.Jur.2d *Domicile* § 66 (1966). The Superior Court Commissioner in his affidavit states that the Washington court is willing to hear the case. *See* Wash.Rev.Code § 26.27.030 (1979).

Thus, these facts make it plain that our trial court does not have jurisdiction under the PKPA to modify the Washington decree. We, therefore, reverse the decision of the trial court.

IT IS SO ORDERED.

PAYNE, FEDERICI and RIORDAN, JJ., concur.

SOSA, Senior Justice, not participating.