**David A. THOMPSON, Plaintiff-Appellant,**

v.

**Susan A. THOMPSON, aka Susan A. Clay, Defendant-Appellee.**

**No. 84–5890.**

United States Court of Appeals, Ninth Circuit.

Argued April 2, 1985.

Submitted Jan. 9, 1986.

Decided Sept. 10, 1986.

Stuart W. Knight, Tustin, Cal., for plaintiff-appellant.

Nancy E. Zeltzer, Ruston & Nance, Inc., Tustin, Cal., for defendant-appellee.

Before BROWNING, Chief Judge, ALARCON, Circuit Judge, and SOLOMON,* District Judge.

PER CURIAM:

This appeal raises an issue of first impression in this circuit: whether parents subject to conflicting state child custody decrees may seek relief in federal court to determine which decree is valid and enforceable under the Parental Kidnapping Prevention Act of 1980, 28 U.S.C. § 1738A (1982) [hereinafter PKPA or section 1738A].

### I

In 1979, Susan Clay Thompson (Susan) commenced proceedings in the California Superior Court for dissolution of her marriage to David A. Thompson (David) and determination of custody of their minor child Matthew. In the fall of 1979 the California court awarded the Thompsons joint custody of Matthew. In November of 1980, one or both parties initiated additional proceedings in the California court[1] which culminated in entry of the following judgment on December 4, 1980:

Present order of custody remains in effect until petitioner moves to Louisiana;

---

* Honorable Gus J. Solomon, Senior Judge, United States District Court for the District of Oregon, sitting by designation.

1. Because the full state court record was not made a part of our record, it is unclear who initiated the 1980 proceedings or what the precise issue at those proceedings was. David alleges he filed a petition requesting sole custody. Susan asserts she filed a motion to obtain the court's permission to move to Louisiana with Matthew.

then custody shall be sole with her without prejudice.[2]

The court also ordered the court investigator to conduct an investigation into custody issues, to be concluded by April of 1981. On December 12, 1980, Susan and Matthew moved to Louisiana with the court's permission.

On March 24, 1981, Susan filed a petition in Louisiana state court for the filing and enforcement of the California custody decree, for judgment of custody, and for modification of David's visitation privileges based upon allegations of child abuse and mistreatment. The Louisiana court granted Susan's petition by order dated April 7, 1981, awarding sole custody of Matthew to Susan.

On June 15, 1981, following its review of the court investigator's report, the California court awarded sole custody of Matthew to David, and "retain[ed] jurisdiction until Petitioner's [Susan's] death, remarriage or further order of the court." On August 12, 1983, David filed a complaint for declaratory and injunctive relief in the District Court for the Central District of California. He sought an order declaring the Louisiana decree invalid, and the 1981 California decree valid, and requiring that all custody disputes be determined by the appropriate California state court until California issues a permanent custody decree. He also sought an injunction against enforcement of the Louisiana decree. The district court granted Susan's motion to dismiss the complaint for lack of subject matter and personal jurisdiction. David appeals.

## II

The district court pointed to a lack of personal jurisdiction over Susan as a ground for its dismissal of David's complaint. Lack of personal jurisdiction would prevent us from considering the merits of David's claims. *See Kulko v. Superior Court*, 436 U.S. 84, 91, 98 S.Ct. 1690, 1696,

56 L.Ed.2d 132 (1978); *Rankin v. Howard*, 633 F.2d 844, 848–49 (9th Cir.1980).

In *Data Disc, Inc. v. Systems Technology Associates, Inc.*, 557 F.2d 1280, 1287 (9th Cir.1977), we summarized the circumstances in which personal jurisdiction will properly lie:

If ... the [nonresident] defendant's activities are not so pervasive as to subject him to general jurisdiction, the issue whether jurisdiction will lie turns on an evaluation of the nature and quality of the defendant's contacts in relation to the cause of action. In our circuit, we use the following approach in making this evaluation: (1) The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws. (2) The claim must be one which arises out of or results from the defendant's forum-related activities. (3) Exercise of jurisdiction must be reasonable.

*See also Varsic v. United States District Court*, 607 F.2d 245, 249 (9th Cir.1979).

The nature and quality of Susan's activities in California persuade us that the requisite minimum contacts are present. First, Susan purposefully availed herself of the privilege of conducting her activities in California when she invoked the benefits and protections afforded by California law by initiating an action for dissolution and child custody. Second, David's action for enforcement of section 1738A is directly related to Susan's original California custody action.

Finally, we think that the exercise of jurisdiction in the Central District is reasonable in the circumstances of this case. California was Susan's marital domicile prior to the dissolution of her marriage; Matthew was born in California and resided

---

**2.** David maintains the award of sole custody to Susan was temporary pending conclusion of the court-ordered investigation, and concludes the California proceeding was still pending when Susan moved to Louisiana. Susan construes the award as permanent, apparently assuming the investigation was undertaken solely with regard to David's visitation rights.

there; Susan initiated dissolution and custody proceedings in California; the dissolution was a California judgment; and the custody order which permitted Susan to relocate to Louisiana and which Susan sought to modify in Louisiana was made by the California court. *See Bergan v. Bergan,* 114 Cal.App.3d 567, 570–71, 170 Cal. Rptr. 751 (1981).

### III

■■■ The district court erred in dismissing David's complaint for lack of subject matter jurisdiction. David's complaint alleges a violation of a federal statute, 28 U.S.C. § 1738A. Federal question jurisdiction exists unless the cause of action alleged is patently without merit, *see Duke Power Co. v. Carolina Environmental Study Group, Inc.,* 438 U.S. 59, 70–71, 98 S.Ct. 2620, 2628–29, 57 L.Ed.2d 595 (1978), or the allegation is clearly immaterial and made solely for the purpose of obtaining jurisdiction. *See Mt. Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 279, 97 S.Ct. 568, 572, 50 L.Ed.2d 471 (1977). The court must assume jurisdiction to decide whether the complaint states a cause of action on which relief can be granted. *Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946). Because jurisdiction is not defeated by the *possibility* that the complaint might fail to state a claim upon which recovery can be had, the failure to state a valid claim is not the equivalent of a lack of subject matter jurisdiction, and calls for a judgment on the merits rather than for a dismissal for lack of jurisdiction. *Rodriguez v. Flota Mercante Grancolombiana, S.A.,* 703 F.2d 1069, 1072 (9th Cir.), *cert. denied,* 464 U.S. 820, 104 S.Ct. 84, 78 L.Ed.2d 94 (1983).

### IV

■■■ As a threshold matter, we must determine whether the PKPA applies to this case. Susan contends the PKPA did not become effective until July 1, 1981, and consequently does not control the Louisiana custody proceedings initiated on March 24, 1981 which culminated in the court's judgment on April 7, 1981.

The PKPA was enacted as a part of Pub.L. No. 96–611, which provides: "The amendments made by this Act shall take effect on, and apply to services furnished on or after, July 1, 1981." Pub.L. No. 96–611, Parental Kidnapping Prevention Act § 2, 94 Stat. 3566, 3567 (1980). Although at first glance this provision seems dispositive, our analysis of the statute as a whole persuades us otherwise. Sections 1 through 5 and section 11 of Pub.L. No. 96–611 contain technical amendments to the Social Security Act which are unrelated to the PKPA. Moreover, the placement of the PKPA's short title indicates that the PKPA was intended as a separate and distinct Act. The short title of the PKPA appears midway through Pub.L. No. 96–611 (immediately preceding section 6 of the statute). The location of the short title in the body of an Act is usually as near to the beginning of the Act as possible. 1A Sands, Sutherland Statutory Construction, § 20.11 (4th rev. ed. 1985) [hereinafter *Sutherland* ]. Therefore, the fact that the PKPA's short title appears after section 2, the provision containing the effective date for Pub.L. No. 96–611, indicates that the PKPA was intended as a separate act not subject to the section 2 effective date.

The inapplicability of the July 1, 1981 effective date to the PKPA becomes clearer when the manner of the PKPA's passage is considered. The PKPA, a bill contemplated by Congress for several years, was finally passed by the Senate when its chief sponsor, Senator Malcolm Wallop, on the floor of the Senate added the PKPA as a rider to a bill on pneumococcal vaccines. *See* 126 Cong.Rec. 33928–29 (1980). The July 1, 1981 effective date, referring to "services furnished," was part of the vaccine bill, not part of the PKPA.

Finally, although by its terms Pub.L. No. 96–611 did not become effective until July 1, 1981, the statute was enacted on December 28, 1980. Section 10 of the Act (a part of the PKPA) requires the Attorney General to report to Congress 120 days after its

enactment on the steps taken to comply with Congress' expressed intent that 18 U.S.C. § 1073 (1982) (prohibiting flight to avoid prosecution) apply to cases involving parental kidnapping and interstate or international flight. This provision plainly contemplates an effective date of December 28, 1980 for the PKPA; were we to hold that the PKPA did not become effective until July 1, 1981, we would ignore the Congressional reporting requirement imposed upon the Attorney General. Where a statute may be given a reasonable interpretation consistent with its language and legislative purpose, we need not give it a literal application which would lead to absurd results. *Haggar Co. v. Helvering,* 308 U.S. 389, 394, 60 S.Ct. 337, 339, 84 L.Ed. 340 (1940); 2A *Sutherland, supra,* § 54.06 (4th rev. ed. 1984). We conclude

section 1738A became effective upon its enactment date, December 28, 1980,[3] and therefore applies to this case.

## V

■ The real issue here is whether David's complaint states a claim upon which relief could be granted.

The PKPA requires states to accord full faith and credit to another state's child custody determination[4] made in compliance with the statute's provisions. 28 U.S.C. § 1738A(a). The statute sets forth the conditions under which a state may assert jurisdiction to enter its own child custody determination resulting in a modification[5] of the determination of the court of another state. The operative provisions of the PKPA are set out in the margin.[6]

---

3. Our conclusion is consistent with those of a number of state courts which have addressed the issue. *See, e.g., Marks v. Marks,* 281 S.C. 316, 315 S.E.2d 158, 160 n. 4 (1984); *Salisbury v. Salisbury,* 657 S.W.2d 761, 766 (Tenn. App.1983); *Belosky v. Belosky,* 97 N.M. 365, 640 P.2d 471, 472 (1982); *State ex rel. Valles v. Brown,* 97 N.M. 327, 639 P.2d 1181, 1183 (1981); *In re Custody of Ross,* 291 Or. 263, 630 P.2d 353, 362 n. 20 (1981). *But cf. Kumar v. County Superior Court,* 32 Cal.3d 689, 186 Cal.Rptr. 772, 652 P.2d 1003 (1982) (PKPA became effective on July 1, 1981, but may be retroactive); *In re Marriage of Leonard,* 122 Cal.App.3d 443, 460 n. 10, 175 Cal.Rptr. 903 (1981) (PKPA became effective on July 1, 1981, and does not have retroactive application).

4. Section 1738A(b)(3) defines a child custody determination as "a judgment, decree or other order of a court providing for the custody or visitation of a child, ... includ[ing] permanent and temporary orders, and initial orders and modifications."

5. A modification is "a custody determination which modifies, replaces, supersedes, or otherwise is made subsequent to, a prior custody determination concerning the same child, whether made by the same court or not." 28 U.S.C. § 1738A(b)(5).

6. Subsections (c)–(g) of section 1738A read:
(c) A child custody determination made by a court of a State is consistent with the provisions of this section only if—
(1) such court has jurisdiction under the law of such State; and
(2) one of the following conditions is met:
(A) such State (i) is the home State of the child on the date of the commencement of

the proceeding, or (ii) had been the child's home State within six months before the date of the commencement of the proceeding and the child is absent from such State because of his removal or retention by a contestant or for other reasons, and a contestant continues to live in such State;
(B)(i) it appears that no other State would have jurisdiction under subparagraph (A), and (ii) it is in the best interest of the child that a court of such State assume jurisdiction because (I) the child and his parents, or the child and at least one contestant, have a significant connection with such State other than mere physical presence in such State, and (II) there is available in such State substantial evidence concerning the child's present or future care, protection, training, and personal relationships;
(C) the child is physically present in such State and (i) the child has been abandoned, or (ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse;
(D)(i) it appears that no other State would have jurisdiction under subparagraph (A), (B), (C), or (E), or another State has declined to exercise jurisdiction on the ground that the State whose jurisdiction is in issue is the more appropriate forum to determine the custody of the child, and (ii) it is in the best interest of the child that such court assume jurisdiction; or
(E) the court has continuing jurisdiction pursuant to subsection (d) of this section.
(d) The jurisdiction of a court of a State which has made a child custody determination consistently with the provisions of this section continues as long as the requirement

David contends Congress intended to give parents a cause of action in federal court for declaratory and injunctive relief to enforce compliance by state courts with the standards established by section 1738A. Susan contends Congress intended to provide federal statutory standards binding upon state courts in affording full faith and credit to child custody decrees, but did not intend to create a cause of action in federal court for the enforcement of these standards.

To determine whether a particular cause of action exists under the statute, "our task is limited solely to determining whether Congress intended to create the private right of action," *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568, 99 S.Ct. 2479, 2485, 61 L.Ed.2d 82 (1979); and that we determine by looking to "the language of the statute itself," *id.*, and to the statute's legislative history. *Id.* at 571–74, 99 S.Ct. at 2486–88.

From our examination of these materials we conclude the statute does not create a cause of action in federal court.

### A.

The PKPA does not expressly authorize suit in federal court to enforce its provisions.

The language of the statute suggests no such cause of action was intended. The statute is directed at the states, and particularly state courts: "The appropriate authorities of every *State* shall ...;" "A court of a *State* may modify ...;" "A court of a *State* shall not exercise jurisdiction...." 28 U.S.C. § 1738A(a), (f), (g)

(emphasis added). In this respect the language mirrors that of the Full Faith and Credit Clause itself and of section 1738, the statutory embodiment of the Clause.

Congress' general purposes were also stated in terms of the state courts: "(1) promote cooperation between *State courts* ...;" and "(5) avoid jurisdictional competition and conflict between *State courts* ...." Pub.L. 96–611, § 7(c)(1) and (5), 94 Stat. at 3569 (emphasis added). Similarly, Congress provided: "In furtherance of the purposes of section 1738A ... *State courts are encouraged*" to give priority to custody proceedings and to award costs and expenses against child snatchers. Pub.L. 96–611, § 8(c), 94 Stat. at 3571 (emphasis added). The language of the statutory findings is particularly significant. Congress noted the growing number of child custody and visitation cases in the courts of the "*States, the District of Columbia, the Commonwealth of Puerto Rico, and the territories and possessions of the United States.*" Pub.L. 96–611, § 7(a)(1), 94 Stat. at 3568 (emphasis added), *reprinted in* note following 28 U.S.C.A. § 1738A (West Supp. 1985), and "the failure *of the courts of such jurisdictions* to give full faith and credit to the judicial proceedings of the other jurisdictions." *Id.* at § 7(a)(4). "For those reasons," Congress found,

it is necessary to establish ... national standards under which *the courts of such jurisdictions* [*i.e.*, of the States, the District of Columbia, the Commonwealth of Puerto Rico, and the territories and possessions of the United States] *will determine their jurisdiction to decide such disputes and the effect to be given*

---

of subsection (c)(1) of this section continues to be met and such State remains the residence of the child or of any contestant.

(e) Before a child custody determination is made, reasonable notice and opportunity to be heard shall be given to the contestants, any parent whose parental rights have not been previously terminated and any person who has physical custody of a child.

(f) A court of a State may modify a determination of the custody of the same child made by a court of another State, if—

(1) it has jurisdiction to make such a child custody determination; and

(2) the court of the other State no longer has jurisdiction, or it has declined to exercise such jurisdiction to modify such determination.

(g) A court of a State shall not exercise jurisdiction in any proceeding for a custody determination commenced during the pendency of a proceeding in another State where such court of that other State is exercising jurisdiction consistently with the provisions of this section to make a custody determination.

*by each such jurisdiction to such decisions by the courts of other such jurisdictions.*

*Id.* at § 7(b) (emphasis added). This language clearly states the duty of applying the statutory standards in determining jurisdiction is imposed upon the state courts themselves.

In contrast, nowhere in the statute is it stated or implied that the obligations imposed by section 1738A are to be imposed upon federal courts or are to be enforced by federal courts.

### B.

We turn to the background and legislative history of PKPA, which, as will be seen, supports the contention that Congress did not intend to create a cause of action in federal court for the enforcement of section 1738A.

The PKPA was adopted primarily to reduce the incentive for parental child-snatching created by refusal of a significant number of states to give effect to the child custody decrees of other states. Prior to enactment of the PKPA, a parent who lost a custody battle in one state had every incentive to snatch the child and move to another state to relitigate the custody issue. Often the snatcher would be rewarded with a favorable custody decree notwithstanding the existence of a conflicting custody decree from the original state.[7]

Such forum shopping was possible because states were not bound by the child custody decrees of sister states. It was not clear that the Full Faith and Credit Clause applied to custody determinations, *see Ford v. Ford,* 371 U.S. 187, 192, 83 S.Ct. 273, 276, 9 L.Ed.2d 240 (1962), and even if it did, a state was bound by the prior custody decree of another state only to the extent that the courts of the state entering the decree would be bound, *id.* at 194, 83 S.Ct. at 277. Because the state entering the decree might modify it freely as conditions affecting the child changed, the courts of another state were free to modify a child custody decree in the same way. *Id.* at 191 n. 2, 83 S.Ct. at 275 n. 2.[8]

---

7. *Parental Kidnaping Prevention Act of 1979: Joint Hearing on S. 105 Before the Subcomm. on Criminal Justice of the Sen. Comm. on the Judiciary and the Subcomm. on Child and Human Development of the Sen. Comm. on Labor and Human Resources,* 96th Cong., 2d Sess. 48 (1980) [hereinafter *PKPA Hearing* ] (statement of Paul Michel, Acting Deputy Attorney General, Department of Justice); *see also Parental Kidnaping, 1979: Hearing Before the Subcomm. on Child and Human Development of the Comm. on Labor and Human Resources,* 96th Cong., 1st Sess. 166 (1979) [hereinafter *PK Hearing* ] (statement of Senator Malcolm Wallop).

8. *Parental Kidnaping Prevention Act of 1979: Addendum to Joint Hearing on S. 105 Before the Subcomm. on Criminal Justice of the Senate Comm. on the Judiciary and the Subcomm. on Child and Human Development of the Senate Comm. on Labor and Human Resources,* 96th Cong., 2d Sess. 101 (1980) [hereinafter *PKPA Addendum* ] (letter from Assistant Attorney General Patricia Wald to Rep. Peter Rodino):

[S]ince child custody orders are continually subject to modification, a court deciding a custody case is not, as a federal constitutional requirement under current judicial interpretation of the Full Faith and Credit Clause, bound by a decree entered by a court of another state in an action involving the same

parties. *See Halvey v. Halvey,* 330 U.S. 610 [67 S.Ct. 903, 91 L.Ed. 1133]; *Kovacs v. Brewer,* 356 U.S. 604 [78 S.Ct. 963, 2 L.Ed.2d 1008]; *Ford v. Ford,* 371 U.S. 187 [83 S.Ct. 273, 9 L.Ed.2d 240].

*See also PK Hearing, supra,* at 166 (statement of Sen. Wallop); *PKPA Hearing, supra,* at 48 (Statement of Paul Michel):

[C]urrent law in many States encourages a parent who does not have custody to snatch the child from the parent who does and take the child to another State to relitigate the custody issue in a new forum. This kind of "forum shopping" is possible because child custody orders are subject to modification to conform with changes in circumstances. Consequently, a court deciding a custody case is not, as a Federal constitutional requirement of the full faith and credit clause, bound by a decree by a court of another State even where the action involves the same parties. ... [Section 1738A] would eliminate the incentive for one parent to remove a minor child to another jurisdiction.

*See also id.* at 12–13 (statement of Sen. Wallop); *id.* at 40–42 (statement of Sen. Durenberger); *id.* at 96–97 (statement of Donald E. Clevenger, Fathers United for Equal Rights and the U.S. Divorce Reform); *id.* at 144–45 (statement of Russell M. Coombs, Professor of Law at Rutgers University).

In an attempt to deal with the problem, a number of states enacted the Uniform Child Custody Jurisdiction Act (UCCJA), 9 U.L.A. §§ 1–28 (1979), which established standards for selecting the appropriate state forum to determine custody, and imposed a duty on the enacting states to recognize and enforce its custody decree entered by such a state forum. The UCCJA proved unsatisfactory for several reasons. A substantial number of states did not adopt the UCCJA, and thus continued to provide havens for child snatchers. *See PKPA Hearing, supra,* at 144 (statement of Prof. Coombs). Several states enacted variations on UCCJA undermining the uniformity essential to the elimination of forum-shopping. *Id.* Even among states that enacted identical provisions, variations in interpretation and application created a potential for dual exercise of jurisdiction and conflicting custody awards. *Id.* at 144–45. In adopting the PKPA, Congress sought to solve these problems by imposing upon all states a single uniform set of federal standards identical to those found in the UCCJA.

Several aspects of the PKPA's legislative history negate the conclusion that Congress intended to create a federal cause of action to enforce its terms, any more than the UCCJA itself created such a forum.

## C.

Committee hearings and floor debates, like the statute itself, reflect a uniform characterization of the section 1738A proposal as addressed to the *states* and imposing a new obligation upon *state* courts.[9]

In striking contrast, there is only one mention in the legislative materials of any role for the federal courts in the enforcement of PKPA.[10] That single reference, discussed in part II E below, occurred during the colloquy leading to the rejection of proposals by Congressman Fish to grant federal courts jurisdiction to enforce custody decrees. As will be seen, it strongly suggests section 1738A should not be read as providing a cause of action in federal court.

## D.

As noted, the problem identified by Congress was not the absence of a federal cause of action, but lack of uniform standards governing assertion of jurisdiction over child custody matters by state courts. In both committee hearings and floor debates, ineffectiveness of the Full Faith and Credit Clause in child custody proceedings was repeatedly identified as the crux of the problem.[11] Congress' response was to provide in section 1738A that child custody decrees must be accorded full faith and credit under the uniform standards provid-

---

**9.** *See, e.g.,* H.R.Rep. No. 96–1401, 96th Cong., 2d Sess. 41; 126 Cong.Rec. 22806–08 (1980) (statement of Sen. Wallop); 125 Cong.Rec. 758 (1979) (statement of Sen. McGovern); *id.* at 738–39 (statement of Sen. Wallop); 124 Cong.Rec. 787 (1978) (statement of Sen. Thurmond); *PKPA Hearing, supra,* at 18 (statement of Rep. Bennett); *id.* at 15 (statement of Sen. Wallop); *PKPA Addendum, supra,* at 138–40 (submission of Sen. Wallop).

**10.** This is true although federal involvement in implementing the statute is commented upon on a number of occasions, *see, e.g.,* 125 Cong.Rec. 758 (1978) (statement of Sen. McGovern); *PKPA Hearing* at 20 (statement of Rep. Duncan); and the anticipated course of proceedings under section 1738A was described many times. *See, e.g.,* 126 Cong.Rec. 22806 (1980) (statement of Sen. Wallop); *Legislation to Revise and Recodify Federal Criminal Laws: Hearings on H.R. 6869 Before the Subcomm. on Criminal Justice of the House Comm. on the Judiciary,* pt. 2, 95th Cong.,

2d Sess. 1004–05 (statement of Prof. Coombs) [hereinafter *Criminal Law Hearing*]; *PKPA Hearing, supra,* at 8 (statement of Sen. Wallop); *PKPA Addendum, supra,* at 139–40 (submission of Sen. Wallop); *PKPA Hearing, supra,* at 18 (statement of Rep. Bennett); *id.* at 40–41 (statement of Sen. Durenberger).

**11.** *See e.g.,* 126 Cong.Rec. 22817 (1980) (statement of Sen. Cranston); *id.* at 22818 (statement of Sen. Durenberger); 125 Cong.Rec. 758 (1979) (statement of Sen. McGovern); 124 Cong.Rec. 5726 (1978) (statement of Rep. Moss); *PKPA Hearing, supra,* at 40 (statement of Sen. Durenberger); *id.* at 18 (statement of Rep. Bennett); *id.* at 15–16 (statement of Sen. Wallop); *PKPA Addendum, supra,* at 138–40 (submission of Sen. Wallop); *Parental Kidnaping: Hearing on H.R. 1290 Before the Subcomm. on Crime of the House Comm. on the Judiciary,* 96th Cong., 2d Sess. 8 (1980) (statement of Rep. Fish) [hereinafter *H.R. 1290 Hearing*].

ed by Congress, thus requiring states to honor the decrees of other states pursuant to a uniform set of federal rules.[12]

Congressional leaders pointed to the UCCJA as the model for section 1738A both in committee hearings and floor debate. Congress' intention was simply to adopt the UCCJA as a federal procedure applicable to all of the states. This is unmistakably clear from the statements of Senator Wallop in introducing the bill that became section 1738A.[13]

The significance of the fact that section 1738A is a deliberate copy of the UCCJA is that Congress was well aware that the UCCJA imposed standards only upon state courts and was enforceable only in such courts.[14] The obvious inference is that Congress intended the duty imposed by section 1738A also to fall only upon the state courts and to be enforceable only in those courts, and not in federal courts.

The Supreme Court held long ago that the Full Faith and Credit Clause was not a source of federal jurisdiction.

[The Full Faith and Credit Clause] only prescribes a rule by which courts, Federal and state, are to be guided when a question arises in the progress of a pending suit as to the faith and credit to be given by the court to the public acts, records and judicial proceedings of a State other than that in which the court is sitting.... [T]o invoke the rule which it prescribes does not make a case arising under the Constitution or laws of the United States.

*Minnesota v. Northern Securities Co.*, 194 U.S. 48, 72, 24 S.Ct. 598, 605, 48 L.Ed. 870 (1904); *see also* C. Wright, A. Miller & E. Cooper, 13B Federal Practice and Procedure 2d § 3563, at 50 (1984). With a single exception noted in the margin,[15] no court

---

12. *See PKPA Addendum, supra,* at 138 (submission of Sen. Wallop); *PKPA Hearing, supra,* at 15 (statement of Sen. Wallop); *id.* at 48 (statement of Mr. Michel); *PK Hearing, supra,* at 50 (statement of Prof. Bodenheimer).

13. Senator Wallop said:
The first section amends title 28 of the United States Code by adding a new section 1738A. The new provision requires State courts to give full faith and credit to custody decrees rendered by sister State courts consistently with the provisions of the bill. The provisions are modeled on the Uniform Child Custody Jurisdiction Act (UCCJA)....
By adding new subsection 1738A, the Federal Government is, in effect adopting key provisions of the UCCJA for the entire country for purposes of interstate custody cases.
125 Cong.Rec. 739 (1979).
When Senator Wallop later offered section 1738A as an amendment to the proposed Domestic Violence Prevention and Services Act, H.R. 2977, 96th Cong., 2d Sess. (1980); S. 1843, 96th Cong., 2d Sess. (1980), he again said:
The first section requires State courts to enforce and not modify the custody and visitation decrees of the States that have adopted the jurisdictional guidelines of the Uniform Child Custody Jurisdiction Act (UCCJA). Embodied in this bill are limited exceptions to this general rule, exceptions which are likewise to be found in the UCCJA. I ask unanimous consent that the UCCJA be printed in full at the conclusion of my remarks.
The PRESIDING OFFICER. Without objection, it is so ordered.

(See exhibit 2.)
Mr. WALLOP. Because the Federal bill mirrors the UCCJA, a brief discussion of that act is relevant....
126 Cong.Rec. 22807 (1980) (statement of Sen. Wallop).
After discussing the UCCJA and its relationship with proposed section 1738A, Senator Wallop continued:
With the enactment of this section of the amendment, Congress will have accomplished what the Supreme Court on numerous occasions has declined to do—it will have established a rule of reason in multistate child-custody conflicts modeled upon the child custody law now in effect in the vast majority of the States....
125 Cong.Rec. 22807–08 (1980) (statement of Sen. Wallop).

14. *See PKPA Hearing, supra,* at 8, 15, 22 (statement of Sen. Wallop); *id.* at 18 (statement of Rep. Bennett); *id.* at 40 (statement of Sen. Durenberger); *PKPA Addendum, supra,* at 138–40 (submission of Sen. Wallop); *PK Hearing, supra,* at 167 (statement of Sen. Wallop); 126 Cong.Rec. 22817 (1980) (statement of Sen. Cranston); *id.* at 22818 (statement of Sen. Durenberger); 124 Cong.Rec. 787 (1978) (statement of Sen. Thurmond). *See also* paragraph 3 of Wald letter, *infra,* n. 16.

15. The Third Circuit expressed a contrary view in *Flood v. Braaten,* 727 F.2d 303, 308 (3d Cir. 1984), that "a federal court may decide whether a state judgment involving domestic relations is

has held the Full Faith and Credit Clause or its implementing statute, section 1738, authorized private suit in federal district court to require a state court to give full faith and credit to the judgment of a court of another state. It seems highly unlikely Congress would follow the pattern of the Full Faith and Credit Clause and section 1738 by structuring section 1738A as a command to state courts to give full faith and credit to the child custody decrees of other states, and yet, without comment, depart from the enforcement practice followed under the Clause and section 1738. The reasonable assumption is that Congress intended the new statute to be implemented as the Full Faith and Credit Clause and its statutory manifestation, section 1738, have been implemented for two centuries.

### E.

While Congress was deliberating the PKPA's full faith and credit approach, proposals to create a federal cause of action to resolve interstate child custody disputes were submitted to Congress and rejected.

This is reflected in a letter addressed during Congressional consideration of PKPA to Representative Peter M. Rodino, Chairman of the Judiciary Committee of the House, by then Assistant Attorney General, now Circuit Judge, Patricia M. Wald, on behalf of the Department of Justice. The Wald letter, extensively quoted in the margin,[16] is the source material re-

---

enforceable." However, none of the eight Supreme Court cases cited holds that a violation of the Full Faith and Credit Clause or section 1738 provides the basis for a cause of action in federal court. Seven of the cited cases were Supreme Court decisions reviewing decisions of *state* courts, not federal courts. If a state court refuses to honor the decision of a court of another state, review may ultimately be sought in the Supreme Court since a federal question is raised: the meaning of the Full Faith and Credit Clause or of section 1738; but none of the eight cases, nor any other case, suggests that instead of following this route, a litigant may file suit in a federal district court under section 1738 and obtain a determination that failure of a state court to enforce the decree of a court of another state violated the Full Faith and Credit Clause or section 1738. The eighth case cited in *Flood* was a diversity case. Thus all eight decisions involved state law causes of action.

**16.** This document, *reprinted in PKPA Addendum* at 101, reads in part as follows:

Dear Mr. Chairman:

This responds to your requests for the views of the Department of Justice on several bills intended to remedy the problem of "child snatching". For the reasons stated below, this Department could support a proposal imposing upon states a federal duty, under standards derived from the Uniform Child Custody Jurisdiction Act, to give full faith and credit to the custody decrees of other states if they meet certain criteria. We would oppose, however, the creation of a criminal penalty for "child snatching" or the creation of a federal forum for resolving custody disputes.

*The Problem*

The Full Faith and Credit Clause of the Constitution (Article IV, Section 1) provides that "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State" and authorizes Congress "to prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof." A child custody order, however, is subject to modification where changed circumstances warrant a different custody arrangement. Consequently, since child custody orders are continually subject to modification, a court deciding a custody case is not, as a federal constitutional requirement under current judicial interpretation of the Full Faith and Credit Clause, bound by a decree entered by a court of another state in an action involving the same parties. See *Halvey v. Halvey,* 330 U.S. 610 [67 S.Ct. 903, 91 L.Ed. 1133]; *Kovacs v. Brewer,* 356 U.S. 604 [78 S.Ct. 963, 2 L.Ed.2d 1008]; *Ford v. Ford,* 371 U.S. 187 [83 S.Ct. 273, 9 L.Ed.2d 240]. As a result, individuals who are unsuccessful (or who expect to be unsuccessful) in an action in one state will attempt to evade that state's jurisdiction by taking the child to another state and relitigating the custody issue there. The second state will often switch custody to the parent within its jurisdiction, thereby encouraging "child snatching" by rewarding the *de facto* physical custodian notwithstanding the existence of an order or decree to the contrary. The problem therefore has its basis in the fact that our form of government is a federation of states, each of which retains jurisdiction over domestic relations within its own boundaries. And domestic relations questions, particularly those involving child custody, have traditionally and exclusively been reserved to state courts, which have developed an expertise in such matters heretofore lacking in federal courts.

.   .   .   .   .

For all these reasons, we have concluded that the soundest approach to this problem is

ferred to most frequently in the legislative proceedings. It touches upon most of the factors relevant to a proper interpretation of PKPA. The Department's letter divides legislative proposals pending in the Congress into three groups: (1) those that would make "child snatching" a crime; (2) those that "would amend title 28 of the Code to *grant jurisdiction to the federal courts to enforce state custody decrees;*" and (3) section 1738A, which "would *impose on states* a federal duty, under enumerated standards derived generally from the UCCJA, to give full faith and credit to the custody decrees of other states." (Emphasis added.) The Department of Justice opposed proposals in the second category in part because they "would increase the workload of the federal courts;" the Department endorsed section 1738A in part because it would not pose the same problems. *See also H.R. 1290 Hearing, supra,* at 139–40 (statement of Prof. Coombs). Congress acted in accordance with the Department's recommendations. Thus the choice now urged upon us has been presented to the Congress and resolved.

This is reflected also in proceedings before the Subcommittee on Crime of the Committee on the Judiciary of the House of Representatives. Representative Fish testified in support of bills he had introduced, H.R. 9913 and H.R. 11273, which conferred jurisdiction upon federal district courts over private suits to enforce custody decrees when children subject to the decrees were removed to other states.[17] Representative Conyers, Chairman of the Subcommittee, questioned Congressman Fish regarding the difference between these bills and the bill that became section 1738A, referred to in the colloquy as the "Bennett proposal": [18]

> Mr. Conyers. Could I just interject, the difference between the Bennett proposal [now section 1738A] and yours: You would have, enforcing the full faith and credit provision, the parties removed to a Federal court. Under the Bennett provision, his bill would impose the full faith and credit enforcement on the State court.
>
> It seems to me that that is a very important difference. The Federal jurisdiction, could it not, Mr. Fish, result in the Federal court litigating between two State court decrees; whereas, in an alternate method previously suggested, we would be imposing the responsibility of

---

that adopted by the civil provisions of proposed 28 U.S.C. 1738A.* In essence, this provision would impose on states a federal duty, under enumerated standards derived from the UCCJA, to give full faith and credit to the custody decrees of other states. Such legislation would, in effect, amount to federal adoption of key provisions of the UCCJA for all states for purposes of interstate custody cases, and would eliminate the incentive for one parent to remove a minor child to another jurisdiction and render unlikely the existence of conflicting custody determinations in different states. We believe that Congress' power under the Commerce Clause could sustain such legislation upon a properly substantiated record.
*Conclusion*
  In sum, then, the Department of Justice supports the enactment of legislation imposing upon states a duty, under standards derived from the Uniform Child Custody Jurisdiction Act, to give full faith and credit to the custody decrees of other states.
* H.R. 988 also adopts a full faith and credit approach. We prefer the provisions of S. 1437.

17. H.R. 9913, 95th Cong., 1st Sess. (1977) reads, in part:

  Each district court of the United States shall have jurisdiction under this section of any civil action brought by a parent or legal guardian of a child for enforcement of a custody order against a parent of the child who, in contravention of the terms of the custody order, has taken the child to a State other than the State in which the custody order was issued.

H.R. 11273, 95th Cong., 2d Sess. (1978), introduced by Rep. Fish in the second session of the 95th Congress, was an exact copy of H.R. 9913. H.R. 11722, 95th Cong., 2d Sess. (1978), introduced by Rep. Dornan, was substantially identical.

18. Rep. Bennett's proposal, H.R. 1290, 96th Cong., 1st Sess. (1979), is practically identical to the enacted § 1738A, except that H.R. 1290 would also have created a federal criminal penalty for "child snatching."

the enforcement upon the State court, and thereby reducing, it seems to me, the amount of litigation.

Do you see any possible merit in leaving the enforcement at the State level, rather than introducing the Federal judiciary?

**Mr. Fish.** Well, I really think that it is easier on the parent that has custody of the child to go to the nearest Federal district court....

**Mr. Conyers.** Of course you know that the Federal courts have no experience in these kinds of matters, and they would be moving into this other area. I am just thinking of the fact that they have "speedy trial" considerations, antitrust, organized crime, the RICO statute, bankruptcy matters, and here on the average of a 21–month docket, you would now be imposing custody matters which it seems might be handled in the courts that normally handle that, especially if we are going to implement the Uniform Child Custody and Jurisdiction Act, which I think is salutary.

**Mr. Fish.** Well, I am not going to presume to tell this committee which authored the Speedy Trial Act—and I served on the subcommittee with the chairman for a couple of years, and I am fully aware that this does present a problem that we cannot duck; that it will add a burden to the Federal court system....

*H.R. 1290 Hearing, supra,* at 14. Following this exchange the House Subcommittee approved the Bennett proposal, now section 1738A, and rejected the Fish proposals providing for enforcement in a federal forum.

### VI

Finally, the PKPA must be interpreted in light of the strong policies reflected in the domestic relations exception to diversity jurisdiction, resting on the principle that "[T]he whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States, and not to the laws of the United States." *Ohio ex rel. Popovici v. Agler,* 280 U.S. 379, 383, 50 S.Ct. 154, 155, 74 L.Ed. 489 (1930) (quoting *In re Burrus,* 136 U.S. 586, 593–94, 10 S.Ct. 850, 852–53, 34 L.Ed. 500 (1890)).

In keeping with this principle, "federal courts must decline jurisdiction of cases concerning domestic relations when the primary issue concerns the status of parent and child or husband and wife." *Buechold v. Ortiz,* 401 F.2d 371, 372 (9th Cir.1968); *see also Csibi v. Fustos,* 670 F.2d 134, 137–38 (9th Cir.1982). Even when a federal question is presented, federal courts decline to hear disputes which would deeply involve them in adjudicating domestic matters. *See, e.g., Firestone v. Cleveland Trust Co.,* 654 F.2d 1212, 1215 (6th Cir. 1981); *Bergstrom v. Bergstrom,* 623 F.2d 517, 520 (8th Cir.1980); *Huynh Thi Ahn v. Levi,* 586 F.2d 625, 632–34 (6th Cir.1978); *Hernstadt v. Hernstadt,* 373 F.2d 316, 318 (2d Cir.1967).

Appellant recognizes the weight of the policy considerations behind the domestic relations exception, and concedes that in adopting section 1738A Congress did not wish to involve federal courts in custody disputes. Appellant suggests, however, that this Congressional intention may be honored by limiting the federal cause of action under the PKPA to resolution of the jurisdictional facts—that is, determining which state court had jurisdiction under the statutory standard—leaving to the courts of that state the resolution of the merits of the custody dispute. The difficulty is not so easily avoided.

The PKPA is so structured that in a type of case likely to arise frequently, a federal court deciding which of two conflicting state court decrees is valid under the PKPA could not avoid becoming involved in the merits of the underlying dispute. Under section 1738A(c)(2)(C)(i), a state may have jurisdiction if "the child has been abandoned," and under section 1738A(c)(2)(C)(ii), a state may assert jurisdiction because "it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse." In this very case Susan's petition to the Louisiana court al-

leges mistreatment and abuse of Matthew by his father. Whether or not subsections (f) and (g) would obviate the need to determine the truth of the allegations in this case,[19] it is incontestible that in any case in which the first state assumed jurisdiction under section 1738A(c)(2)(C) the federal court would be compelled to resolve the question of abandonment or mistreatment, a question that in all probability would also be highly relevant if not determinative in the resolution of the merits of the custody dispute. Absent a clear command from Congress, the longstanding prohibition against federal court involvement in such matters should not be disregarded.

## VII

For these reasons we conclude the PKPA creates no cause of action enforceable in federal court, and appellant did not and could not state a cause of action under section 1738A in the court below.

The District of Columbia and Seventh Circuits, in *dicta*, have expressed the same view. *See Lloyd v. Loeffler*, 694 F.2d 489, 493 (7th Cir.1982); *Bennett v. Bennett*, 682 F.2d 1039, 1043 (D.C.Cir.1982). The Third, Fifth and Eleventh Circuits have held to the contrary. *See McDougald v. Jenson*, 786 F.2d 1465 (11th Cir.1986); *Heartfield v. Heartfield*, 749 F.2d 1138 (5th Cir.1985); *DiRuggiero v. Rodgers*, 743 F.2d 1009 (3d Cir.1984); *Flood v. Braaten*, 727 F.2d 303 (3d Cir.1984).

The Third, Fifth and Eleventh Circuits did not find direct support for their construction in the language or legislative history of the statute. Each rested its decision upon the conclusion that without a federal forum to enforce the restrictions imposed by the statute upon state courts those restrictions would be rendered "nugatory" and Congress' purpose would be "thwarted." *See McDougald*, 786 F.2d at

1477; *Heartfield*, 749 F.2d at 1141; *Flood*, 727 F.2d at 312.

We are not persuaded and, more to the point, there is no evidence that Congress was persuaded, that the states would disregard the solemn mandate of Congress so clearly expressed in section 1738A. As we have seen, the consideration found by these Circuits to be dispositive is nowhere reflected in the language of the statute or its legislative history. If members of Congress considered the possibility at all they may well have concluded that if such incidents occurred they would be rare and could be corrected by Supreme Court review under 28 U.S.C. § 1257 (1982) without a substantial drain upon the Court's limited resources.

**AFFIRMED.**

ALARCON, Circuit Judge, concurring in part and dissenting in part:

I concur in the majority's analysis in Parts I, II, III, and IV of the opinion. I respectfully dissent from their view that parents subject to conflicting state child custody decrees may not seek relief in federal court to determine which decree is valid and enforceable under section 1738A of the PKPA. The majority has concluded that (1) Congress did not intend federal courts to have subject matter jurisdiction to adjudicate a claim under the PKPA in federal court, and (2) strong policies reflected in the "domestic relations" exception to diversity jurisdiction counsel against recognizing a federal cause of action enforceable in federal court under the PKPA.

The majority's construction of the PKPA directly conflicts with the holdings of three circuits. *McDougald v. Jenson*, 786 F.2d 1465 (11th Cir.1986); *Heartfield v. Heartfield*, 749 F.2d 1138 (5th Cir.1985); *Flood v. Braaten*, 727 F.2d 303 (3d Cir.1984). These courts have concluded that the

---

**19.** Subsections (f) and (g) might be read to mean that so long as the first state had and retains jurisdiction, no other state may modify the first state's decree or enter a decree of its own, even though the child has been abandoned in the second state or there is an emergency

involving actual or threatened abuse of the child. Another interpretation is that the second state is permitted to act in the limited situations in subsection (c) despite initial and continuing jurisdiction in the first state.

PKPA confers subject matter jurisdiction on federal courts to determine which of two states may properly exercise jurisdiction over a child custody dispute in accord with the standards set forth in the PKPA. *McDougald,* 786 F.2d at 1475; *Heartfield,* 749 F.2d at 1141; *Flood,* 727 F.2d at 312–13.

The majority's interpretation of the PKPA would convert an act of Congress into barren rhetoric. My examination of the legislative history of the PKPA has convinced me that the well-reasoned analyses of the Third, Fifth, and Eleventh Circuits are consistent with Congress' intent in enacting the PKPA. I would reverse the order of dismissal of this action for lack of subject matter jurisdiction and direct the district court to conduct an evidentiary hearing to determine whether California or Louisiana has jurisdiction over this child custody matter.

## I. LEGISLATIVE HISTORY OF THE PKPA

The majority states that the legislative history of the PKPA reveals that Congress did not intend to create a cause of action in federal court for the enforcement of section 1738A. I disagree. I am persuaded after reading the legislative history of the Act that the drafters of the PKPA intended to confer subject matter jurisdiction on the federal courts to enforce compliance with section 1738A through the vehicles of declaratory and injunctive relief. A contrary construction of section 1738A would make state compliance with its provisions optional—a result which Congress could not have intended.

Section 1738A imposes on the states a federal duty, under standards derived from the UCCJA, to give full faith and credit to the custody decrees of other states. *Joint Hearing, supra,* at 48 (statement of Paul Michel, Acting Deputy Attorney General, Department of Justice); *Addendum to Joint Hearing, supra,* at 103 (letter from Assistant Attorney General Patricia Wald to Representative Peter Rodino). The legislative history demonstrates that Congress

sought to enact a federal law to address an interstate problem which the states, acting on their own, appear powerless to resolve. *See Joint Hearing, supra,* at 4 (statement of Senator Alan Cranston) ("Although legal custody issues relating to divorce and child-custody matters have traditionally been within the domain of the States and not the Federal Government, it is within the province of the Federal Government to resolve problems that are interstate in origin and which the States, acting independently, seem unable to resolve"); *id.* at 7 (statement of Senator Malcolm Wallop) ("While the traditional role of State law must be preserved in intrastate cases, we at the Federal level have a compelling responsibility to take the necessary and appropriate steps to assist States in resolving the complicated interstate ... cases which they have been unable to adequately address themselves"); *id.* at 20 (statement of Congressman Robert Duncan) ("Though I would prefer to have this question addressed at the State level, it has not been.... We must not fear to use the Federal Government at an appropriate level when necessary").

The majority states that "the colloquy leading to the rejection of proposals by Congressman Fish to grant federal courts jurisdiction to enforce custody decrees ... strongly suggests that section 1738A should not be read as providing a cause of action in federal court." I believe the majority has misinterpreted Congress' intent in rejecting Congressman Fish's proposed amendments. The discussion cited by the majority reflects an intent by Congress not to eliminate the judicially created "domestic relations" exception to diversity jurisdiction by enacting 1738A. Specifically, Congressman Fish proposed to amend 28 U.S.C. § 1332 to authorize diversity jurisdiction in custody cases and to eliminate the $10,000 minimum amount in controversy requirement. *See Parental Kidnapping: Hearing on H.R. 1290 Before the Subcomm. on Crime of the House Judiciary Comm.,* 96th Cong., 2d Sess. 9 (1980) (Statement of Congressman Hamilton Fish,

Jr.). Congressman Fish's bill would have conferred jurisdiction on federal courts to enforce state custody decrees in the *first* instance. There is a significant distinction between the creation of a federal forum for custody cases in the first instance, and the delineation of enforceable federal standards applicable to determine which state court may exercise its jurisdiction over a custody dispute. It does not necessarily follow, as the majority reasons, that because Congress rejected the notion that the federal courts should determine which parent should be awarded the custody of a child, that Congress also intended to exclude any role for federal courts in determining which of two states properly exercised its jurisdiction to award custody of a child.

The Third Circuit made a comprehensive analysis of the legislative history of section 1738A in *Flood v. Braaten,* 727 F.2d 303, 310–12. It concluded that Congress must have intended the jurisdiction of the federal district courts to extend to such actions, as any other result would "render § 1738A virtually nugatory by so restricting the availability of a federal forum that state compliance with the legislation would become optional." *Id.* at 312. The court summarized its conclusions regarding the import of the legislative history and congressional purpose behind section 1738A as follows:

> While it is clear that Congress did not want federal courts making custody determinations, and while it is also clear that Congress did not want federal courts enforcing custody decrees in the first instance, it is nevertheless apparent that Congress meant to create new federal law governing state court enforcement and modification of custody decrees. By enacting one set of rules binding all the states, Congress sought to eliminate the inconsistency and close the loopholes that encouraged child snatching under the old system in which each state exercised unreviewable power to modify decrees. Absent some tribunal capable of enjoining violations of the strict and uniform requirements of § 1738A, the Congres-

sional policy underlying the enactment would be thwarted.

*Id.* at 310; *accord Heartfield,* 749 F.2d at 1141 ("When the courts of two states assert that they have jurisdiction over a custody determination, it is clear that Congress' purpose in enacting the Act would be thwarted without some means of determining which state has the right to exercise its jurisdiction under the terms of the Act."); *McDougald,* 786 F.2d at 1475 ("an action seeking an authoritative federal construction of section 1738A to resolve a conflict concerning the validity of state court custody orders may be maintained in federal district court"); *see also DiRuggiero,* 743 F.2d at 1015 (claims alleging a violation of section 1738A arise under federal law within the meaning of 28 U.S.C. § 1331 if they allege injury caused by inconsistent interstate custody decrees); *Wyman v. Larner,* 624 F.Supp. 240, 243 (S.D.Ind. 1985) ("Federal courts have jurisdiction under the PKPA ... to determine which of two inconsistent state court custody decrees is valid"); *Martinez v. Reed,* 623 F.Supp. 1050, 1051–52 (E.D.La.1985) (a federal district court has federal question subject matter jurisdiction over a claim brought under the PKPA), *aff'd without opinion,* 783 F.2d 1061 (5th Cir.1986). My independent examination of section 1738A's legislative history leads me to the same conclusion.

The legislative history of the PKPA shows that Congress sought to leave untouched a state's traditional role in deciding custody disputes while at the same time providing a nationwide standard for the assertion of state jurisdiction. In so doing, Congress created a mechanism for federal intervention to resolve interstate conflicts in enacting section 1738A. *See Joint Hearing, supra,* at 19 (statement of Congressman Robert Duncan) ("The proposal we consider today is a paradigm of the problem of maintaining a Federal balance"); *Joint Hearing, supra,* at 145 (statement of Professor Russell Coombs, former member of the Senate Committee on the Judiciary, Professor of Law at Rut-

gers University) (section 1738A was enacted to provide "an adequate mechanism to insure that [UCCJA standards] are interpreted and applied by the States with such uniformity that parents will perceive no legal advantage in [child-snatching]'").

The majority's construction of section 1738A will so restrict the enforceability of the rights created by section 1738A in this circuit so as to deny a meaningful remedy to litigants confronted with two conflicting state custody decrees. *Heartfield*, 749 F.2d at 1140; *see Flood*, 727 F.2d at 312 ("'To take away all remedy for the enforcement of a right is to take away the right itself'") (quoting *Poindexter v. Greenhow*, 114 U.S. 270, 303, 5 S.Ct. 903, 921, 29 L.Ed. 185 (1885)). The interpretation given to section 1738A by the Third, Fifth and Eleventh Circuits fosters congressional intent and avoids the pitfall of a literal application of the statute as a toothless declaration of unenforceable platitudes.

## II. THE "DOMESTIC RELATIONS" EXCEPTION TO DIVERSITY JURISDICTION

The majority states that because federal courts "could not avoid becoming involved in the merits of the underlying [custody] dispute" by asserting subject matter jurisdiction to decide which of two conflicting state court decrees is valid under the PKPA, "the PKPA must be interpreted in light of the strong policies reflected in the domestic relations exception to diversity jurisdiction...." I disagree.

The longstanding bar to *federal diversity* jurisdiction in domestic relations matters has no application to an action predicated on *federal question* jurisdiction. "[T]he domestic relations exception *per se* applies only to actions in diversity." *Flood*, 727 F.2d at 307 (citing C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3609, at 662 (1975)). The law in this circuit, until today, has also recognized the pertinent distinction between applying the domestic relations exception to diversity actions and withholding it in federal question actions: "[D]omestic relations cases are within the Article III judicial power of the federal courts, but outside the power bestowed by Congress in the diversity statute." *Csibi*, 670 F.2d at 136 n. 4. Stated another way, "as a jurisdictional bar, the domestic relations exception does not apply to cases arising under the Constitution or laws of the United States." *Flood*, 727 F.2d at 308 (footnote omitted).

The domestic relations exception to diversity jurisdiction has no application to cases arising under the PKPA. "The domestic relations exception to the jurisdictional grant has been given a narrow construction." *McIntyre v. McIntyre*, 771 F.2d 1316, 1317 (9th Cir.1985) (citing *Peterson v. Babbitt*, 708 F.2d 465, 466 (9th Cir.1983) (per curiam)); *see also* 13B C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3609, at 471 (1984) (hereinafter Wright, Miller & Cooper). Only those actions most closely resembling historically "ecclesiastical" actions have been considered outside a federal court's jurisdiction.[1] *Csibi*, 670 F.2d at 137. This court in *Buechold* articulated the test for subject matter jurisdiction in domestic relations actions. *Id.* The federal courts "must decline jurisdiction of cases concerning domestic relations when the primary issue concerns the status of parent and child or husband and wife." *Buechold*, 401 F.2d at 372 (citations omitted). "It follows that the

---

1. The domestic relations exception originated from early judicial construction of the diversity statute now codified in 28 U.S.C. 1332. *Csibi*, 670 F.2d at 136 & n. 5. The originally enacted diversity statute in 1789 conferred jurisdiction over "'suits of a civil nature in law or in equity.'" Wright, Miller & Cooper, *supra*, § 3609, at 460. That statutory description was construed to exclude domestic relations and probate matters which were heard in ecclestiastical courts at the time the diversity statute was drafted. *Id.; Csibi*, 670 F.2d at 136. Although the Revised Judicial Code of 1948, Act of June 25, 1948, § 1331, 62 Stat. 869 at 930, substituted the broader term "civil actions" in its description of diversity jurisdiction, the domestic relations exception has persisted because the courts have found it supported by sound policy. Wright, Miller & Cooper, *supra*, § 3609, at 460-61.

exception to jurisdiction arises in those cases where a federal court is asked to grant a decree of divorce or annulment, or to grant custody or fix payments for support, the rationale being that those actions are close to the historical concept of an ecclesiastical action and peculiarly within the province of the state courts." *McIntyre*, 771 F.2d at 1317–18 (citing *Csibi*, 670 F.2d at 137).

In a case arising under section 1738A, the primary issue is not the status of parent and child, i.e., the federal court is not asked to enter a child custody decree or to enforce an interstate custody decree, but rather, the inquiry is limited to the question of determining which state has failed to comply with the jurisdictional prerequisites of section 1738A. Section 1738A makes clear that only one state at a time may properly exercise custody jurisdiction. If two states concurrently render custody decrees, one state has asserted jurisdiction in violation of federal law. 28 U.S.C. §§ 1738A(f), (g); *see Flood*, 727 F.2d at 310. In an action under the PKPA in federal court, the district court is not asked to make an award of custody or visitation. Instead, the district court is called upon to identify which state has jurisdiction under the standards set forth in section 1738A. This task requires only a preliminary inquiry into jurisdictional facts. *DiRuggiero*, 743 F.2d at 1019–20; *Flood*, 727 F.2d at 310. The court in *DiRuggiero* carefully spelled out the distinction between making custody awards in the first instance and the resolution of interstate disputes over the validity of competing custody decrees:

The contemporary purpose of the domestic-relations exception rests on functional considerations. An award in the first instance of divorce, alimony, child custody, visitation, or support requires the exercise of an informed discretion, discretion in which local institutions are expert and with which federal courts are unfamiliar. Such awards require continuing supervision over large numbers of cases, for which the federal courts are ill-equipped. Unlike local institutions, the federal courts are not supplemented by a professional social service staff. And on a more theoretical plane, the discretionary standards for an award of support, alimony, custody, or visitation are so amorphous and flexible that the federal courts could not predict with any confidence that their application of state law would duplicate the result that would be obtained at the state level.

These considerations are absent in interstate disputes over the validity of competing custody decrees. In that circumstance we are not asked to make an award of custody, visitation, or support in the first instance. Rather, the federal courts must ascertain which of two competing state custody awards is paramount under federal and state law. As we held in *Flood v. Braaten*, this determination "requires only a preliminary inquiry into jurisdictional facts." 727 F.2d at 310.

*DiRuggiero*, 743 F.2d at 1019–20 (emphasis added).

The majority's reliance upon *Bennett v. Bennett*, 682 F.2d 1039 (D.C.Cir.1982) is misplaced. In *Bennett*, the court was presented with two narrow issues: whether a federal court has jurisdiction to grant monetary or prospective injunctive relief in a tort action based upon a parental kidnapping. *Id.* at 1042–43. As to injunctive relief, the plaintiff sought an order "directing and enjoining the defendant from any interference with the custody rights of the plaintiff" over the children. *Id.* at 1041. The court examined the legislative history of the PKPA and found that Congress deliberately omitted the creation of a direct role for the federal courts in determining child custody. *Id.* at 1043–44 & n. 6. Because a grant of prospective injunctive relief would have required an inquiry into the interests of the children—an inquiry precluded by the domestic relations exception to diversity jurisdiction—the court held that it lacked jurisdiction to issue such an order. *Id.* at 1042–44.

The *Bennett* court's conclusion that Congress did not intend to alter the domestic relations exception to diversity jurisdiction

and to confer on federal courts the power to *determine* the custody of children has no bearing on or relationship to the *enforcement* of a valid state custody decree through the vehicles of declaratory relief and limited injunctive relief. *See Flood,* 727 F.2d at 312 n. 27; *Bennett,* 682 F.2d at 1045 (Edwards, J., dissenting in part). I would conclude that a district court may exercise its jurisdiction under section 1738A to enforce compliance with the PKPA's provisions through declaratory relief and narrowly circumscribed injunctive relief.

I would REVERSE the judgment of the district court.