Robert D. BOOZER, for himself and as father and best friend of their minor child KWB, Plaintiff–Appellant,

v.

Darlene WILDER, Colville Confederated Tribal Member; Ian Wilder, Colville Confederated Tribal Member; Colville Conferated Tribes, Defendants–Appellees.

No. 03–35722.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 13, 2004.

Filed Aug. 27, 2004.

---

---

Robert R. Fischer, Spokane, WA, for the plaintiff-appellant.

Thomas W. Christie, Confederated Tribes of the Colville Reservation, Nespelem, WA, for the defendants-appellees.

Before B. FLETCHER, HAMILTON,* and BERZON, Circuit Judges.

BETTY B. FLETCHER, Circuit Judge:

Robert D. Boozer ("Boozer") appeals the district court's dismissal of his complaint challenging the Colville Tribe's ("Tribe") jurisdiction to decide a custody dispute over his daughter, K.W.B. The district court dismissed the complaint for failure to exhaust tribal court remedies. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## I. BACKGROUND

K.W.B. was born in February 1994 to Boozer and Mawe We–Ta–Lo Wilder–Boozer ("Wilder–Boozer"). K.W.B. is a member of the Colville Tribe, as was her mother until her death; Boozer is non-Indian. Boozer and Wilder–Boozer separated in 1999, and the Colville Tribal Court

awarded full custody of K.W.B. to Wilder–Boozer and visitation to Boozer. In July 2002, Wilder–Boozer filed a divorce petition in tribal court. During the divorce proceedings, Boozer was restrained from having any contact with K.W.B. and ordered to take anger-management courses. Boozer moved to Georgia, and K.W.B. remained on the Colville Reservation with her mother. Apparently, during that time, Wilder–Boozer's parents, Darlene and Ian Wilder (collectively, "the grandparents"), who are also members of the Colville Tribe and residents of the reservation, provided much of K.W.B.'s care.

Wilder–Boozer died unexpectedly on June 3, 2003. The next day, the grandparents received a Temporary Restraining Order (TRO) from the tribal court granting them emergency temporary custody of K.W.B. and restraining Boozer from contacting them or K.W.B. The TRO application stated that the grandparents understood that Boozer was under a court order restraining him from contacting K.W.B. and that the grandparents believed that it would be best for K.W.B.'s safety and well-being if she were not returned to Boozer's custody. On June 5, 2003, Boozer filed motions in tribal court to vacate the order restraining him from contact with K.W.B. and dismiss his divorce proceedings, without protesting the tribal court's jurisdiction over the custody dispute.[1]

On June 9, 2003, Boozer filed a complaint in district court requesting that the district court order the grandparents or the Tribe to return K.W.B. to Boozer's custody and hold that the State of Georgia, rather than the Tribe, has jurisdiction to determine K.W.B.'s custody. The district

---

* Honorable Clyde H. Hamilton, United States Senior Circuit Judge for the Fourth Circuit, sitting by designation.

1. The excerpts of record contain another motion requesting custody of K.W.B., but it appears that this motion was not filed; unlike the other two motions, it is neither signed by Boozer's attorney nor stamped as filed.

court dismissed the complaint, holding that Boozer must exhaust tribal court remedies before bringing suit in federal court because the Indian Child Welfare Act (ICWA) vested the tribal court with exclusive jurisdiction over the custody dispute. After the district court denied his motion for reconsideration, Boozer timely filed a notice of appeal to this court.

In the meantime, on June 16, 2003, the tribal court held a preliminary hearing to determine if Boozer was fit to regain custody of K.W.B. or if temporary custody should be granted to the grandparents. At the hearing, several witnesses, including a psychologist who had counseled K.W.B., testified that they believed that K.W.B. should not be returned to her father's care at that time. The tribal court granted the grandparents temporary custody, permitted Boozer supervised visitation with K.W.B., ordered Boozer to attend counseling with K.W.B., ordered Boozer and the grandparents to attend mediation, restrained Boozer from otherwise contacting K.W.B. or the grandparents, and ordered further briefing from the parties. Mediation was terminated, apparently unsuccessfully, in September 2003. At oral argument before our court, the parties informed us that the tribal court held hearings to resolve K.W.B's custody in June 2004, after which Boozer moved to stay the proceedings pending his motions for a mistrial and to recuse the tribal court judge.

## II. STANDARD OF REVIEW

■■■ We review de novo whether the district court had subject matter jurisdiction. *See Chang v. United States*, 327 F.3d 911, 922 (9th Cir.2003). Whether exhaustion of tribal court remedies is required is a question of law reviewed de novo. *See Boxx v. Long Warrior*, 265 F.3d 771, 774 (9th Cir.2001).

## III. DISCUSSION

### A. *Subject Matter Jurisdiction*

■■■ *Non–Indians may bring a federal common law cause of* action under 28 U.S.C. § 1331 to challenge tribal court jurisdiction. *Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians*, 471 U.S. 845, 850–53, 105 S.Ct. 2447, 85 L.Ed.2d 818 (1985). Because "federal law defines the outer boundaries of an Indian tribe's power over non-Indians," *id.* at 851, 105 S.Ct. 2447, the "question whether an Indian tribe retains the power to compel a non-Indian ... to submit to the civil jurisdiction of a tribal court is one that must be answered by reference to federal law and is a 'federal question' under § 1331." *Id.* at 852, 105 S.Ct. 2447. Because Boozer is non-Indian, § 1331 provides subject matter jurisdiction over his federal common law challenge to the tribal court's jurisdiction to determine his fitness to regain custody of K.W.B.[2]

**2.** Boozer styled his complaint as a habeas petition under the Indian Civil Rights Act (ICRA). A habeas petition is the only avenue for relief from a violation of ICRA. *See* 25 U.S.C. § 1303; *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 51–52, 67–70, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978). We previously entertained a habeas petition alleging a violation of ICRA in a child custody dispute. *See Cobell v. Cobell*, 503 F.2d 790, 792–95 (9th Cir.1974). However, a person must be detained by a tribe to bring an ICRA habeas petition, 25 U.S.C. § 1303, and it is not clear

if K.W.B. is detained within the meaning of the statute. Detention is interpreted with reference to custody under other federal habeas provisions. *See Moore v. Nelson*, 270 F.3d 789, 791–92 (9th Cir.2001) (relying on habeas cases interpreting custody to analyze detention under ICRA); *Poodry v. Tonawanda Band of Seneca Indians*, 85 F.3d 874, 879–80, 890–91 (2d Cir.1996) (holding that ICRA detention is synonymous with custody in other federal habeas statutes). The Supreme Court has held that children placed in foster care are not in state custody for the purposes of feder-

B. *Failure to Exhaust Tribal Court Remedies*

 Although " § 1331 encompasses the federal question whether a tribal court has exceeded the lawful limits of its jurisdiction, ... exhaustion is required before such a claim may be entertained by a federal court." *Nat'l Farmers Union,* 471 U.S. at 857, 105 S.Ct. 2447. A federal court must give the tribal court a full opportunity to determine its own jurisdiction, which includes exhausting opportunities for appellate review in tribal courts. *Iowa Mut. Ins. Co. v. LaPlante,* 480 U.S. 9, 16–17, 107 S.Ct. 971, 94 L.Ed.2d 10 (1987); *see also Selam v. Warm Springs Tribal Corr. Facility,* 134 F.3d 948, 954 (9th Cir.1998) (holding that the district court properly required exhaustion, including tribal appellate review, before entertaining an ICRA habeas petition).

 Exhaustion is prudential; it is required as a matter of comity, not as a jurisdictional prerequisite. *Strate v. A–1 Contractors,* 520 U.S. 438, 451, 117 S.Ct. 1404, 137 L.Ed.2d 661 (1997); *LaPlante,* 480 U.S. at 16 n. 8, 107 S.Ct. 971. Exhaustion is not required where "the action is patently violative of express jurisdictional prohibitions," *Nat'l Farmers Union,* 471 U.S. at 856 n. 21, 105 S.Ct. 2447, or it is otherwise plain that the tribal court lacks jurisdiction over the dispute, such that adherence to the exhaustion requirement would serve no purpose other than delay. *Nevada v. Hicks,* 533 U.S. 353, 369, 121 S.Ct. 2304, 150 L.Ed.2d 398 (2001); *Strate,* 520 U.S. at 459–60 n. 14, 117 S.Ct. 1404. Likewise, exhaustion is not required "where an assertion of tribal jurisdiction is motivated by a desire to harass or is conducted in bad faith ... or where exhaustion would be futile because of the lack of an adequate opportunity to challenge the court's jurisdiction." *Nat'l Farmers Union,* 471 U.S. at 856 n. 21, 105 S.Ct. 2447.

 Boozer argues that he need not exhaust tribal court remedies because it is plain that the tribal court lacks jurisdiction under ICWA's jurisdictional provisions and because exhaustion would be futile.

Boozer's argument that the tribe clearly lacks jurisdiction under ICWA is without merit. ICWA provides:

An Indian tribe shall have jurisdiction exclusive as to any State over any child custody proceeding involving an Indian child who *resides or is domiciled* within the reservation of such tribe, except where such jurisdiction is otherwise vested in the State by existing Federal law. Where an Indian child is a ward of a tribal court, the Indian tribe shall retain exclusive jurisdiction, notwithstanding the residence or domicile of the child.

25 U.S.C. § 1911(a) (emphasis added). Boozer argues that even if K.W.B. resides on the Colville reservation, there is plainly no jurisdiction in the tribal court, because she is legally domiciled in Georgia.[3] By so

al habeas proceedings under 28 U.S.C. § 2254. *Lehman v. Lycoming County Children's Servs. Agency,* 458 U.S. 502, 510, 102 S.Ct. 3231, 73 L.Ed.2d 928 (1982). Because the district court had jurisdiction under 28 U.S.C. § 1331, we do not decide whether a federal court may entertain an ICRA habeas petition in a child custody dispute after *Lehman.* Likewise, we do not address other possible jurisdictional problems with a habeas petition, such as Boozer's next-friend stand-

ing, whether the defendants are proper respondents to a habeas petition, and tribal sovereign immunity under ICRA.

3. Boozer also suggests that K.W.B. did not "reside" on the reservation for statutory purposes, because at the time the district court proceedings were instituted she lived there as a result of the tribal court order. We do not decide whether K.W.B. in fact "resides" on the reservation within the meaning of the statute. We conclude only that it is not frivo-

arguing, Boozer mistakenly reads the word "resides" out of § 1911(a).

To support his argument, Boozer relies on *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 109 S.Ct. 1597, 104 L.Ed.2d 29 (1989), but he misunderstands the holding of that case. In *Holyfield*, it was uncontested that two Indian children given up for adoption never resided on the reservation. The Court held that the tribe had exclusive jurisdiction over the custody proceeding because the children legally were domiciled on the Indian reservation where their parents were domiciled. 490 U.S. at 47–51, 109 S.Ct. 1597. *Holyfield* observed that "the main effect of [ICWA] is to curtail state authority" over child custody proceedings involving Indian children, *id.* at 45 n. 17, 109 S.Ct. 1597, and ICWA's "purpose was, in part, to make clear that in certain situations the state courts did *not* have jurisdiction over child custody proceedings." *Id.* at 45, 109 S.Ct. 1597 (emphasis in the original). *Holyfield* did not hold that domicile trumped residency, but rather followed ICWA's plain statement that either residence *or* domicile on the reservation vests the tribal courts with jurisdiction over the child custody proceeding.

Because K.W.B. may reside on the Colville reservation, conducting the custody proceeding in tribal court is not "patently violative of express jurisdictional prohibitions," *Nat'l Farmers Union*, 471 U.S. at 856 n. 21, 105 S.Ct. 2447, nor is it otherwise plain that the tribal courts lack jurisdiction over the dispute. *Hicks*, 533 U.S. at 369, 121 S.Ct. 2304.[4]

█ Likewise, we find Boozer's argument that exhaustion is futile unpersuasive. Boozer relies on the delay in the determination of K.W.B.'s custody. Although "[d]elay alone is not ordinarily sufficient to show that pursuing tribal remedies is futile," *Johnson v. Gila River Indian Cmty.*, 174 F.3d 1032, 1036 (9th Cir.1999), we conclude that unreasonable delay in the custody determination would be sufficient, standing alone, to render futile exhaustion of tribal court remedies because the harm alleged is lost parenting time that can never be regained. Nonetheless, Boozer made no effort to exhaust tribal court remedies before filing a federal claim. Boozer filed suit in federal court only six days after Wilder–Boozer died, five days after the grandparents requested custody, and four days after he filed a motion in tribal court requesting that the court lift the order prohibiting Boozer from contacting K.W.B., in which he did not contest the tribal court's jurisdiction to determine K.W.B.'s custody.

█ Moreover, some delay is inevitable if any court is to adjudicate K.W.B.'s custody. The tribal court promptly held a

---

lous to maintain that she did reside on the reservation at the pertinent time.

4. We note that neither party disputes that this case involves a "child custody proceeding," within the meaning of ICWA. Child custody proceedings include foster care placements, termination of parental rights, preadoptive placements, and adoptive placements. It appears that the tribal court is treating the tribal court proceedings as a foster care determination. There was a previous court order forbidding Boozer to contact K.W.B., and it seems that there are concerns about his fitness to regain custody of her. If Boozer's fitness were not at issue, the Tribe plainly would be without jurisdiction to hold a foster care determination or other "child custody proceeding" within the meaning of ICWA. A fit parent has a fundamental constitutional right to make decisions about the care and custody of his children, which includes the right to deny grandparents visitation and custody. *See Troxel v. Granville*, 530 U.S. 57, 65–69, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000) (holding that a state may not award grandparent visitation against a parent's wishes where there is no allegation that the parent is unfit).

hearing on K.W.B.'s custody on June 16, 2003, after which it ordered measures that could have led to reunification of Boozer and K.W.B., including visitation, counseling, and mediation. It is possible that this unfortunate dispute already would have been resolved if there were not dueling tribal and federal proceedings. There is no evidence that the Tribe is not competent to handle the dispute, will not offer Boozer a fair opportunity to regain custody of K.W.B., or will not act in the child's best interests. Boozer repeatedly has subjected himself to the jurisdiction of the tribal court in the past. Although we are troubled by the year that K.W.B. has spent wondering who will raise her, the delay is not yet sufficient for us to conclude that exhaustion of tribal court remedies would be futile.

## IV. CONCLUSION

The district court's dismissal of Boozer's complaint for failure to exhaust tribal court remedies is **AFFIRMED.**