**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

Ross Atwood,
              *Plaintiff-Appellant,*

v.

Fort Peck Tribal Court
Assiniboine and Sioux Tribes; and
Linda L. Flynn Hanson,
              *Defendants-Appellees.*

No. 06-35299

D.C. No.
CV-05-00165-RFC

OPINION

Appeal from the United States District Court
for the District of Montana
Richard F. Cebull, District Judge, Presiding

Submitted November 6, 2007*
Seattle, Washington

Filed January 18, 2008

Before: William C. Canby, Jr., Susan P. Graber, and
Ronald M. Gould, Circuit Judges.

Opinion by Judge Graber

---

*The panel unanimously finds this case suitable for decision without oral argument. Fed. R. App. P. 34(a)(2).

## COUNSEL

J. Gregory Tomicich, Billings, Montana, for the plaintiff-appellant.

Ryan C. Rusche, Poplar, Montana, and Carol C. Johns, Wolf Point, Montana, for the defendants-appellees.

## OPINION

GRABER, Circuit Judge:

This case involves a custody dispute concerning an Indian child, Lexie. After the untimely death of Lexie's mother, Lexie's maternal aunt, Defendant Linda L. Flynn Hanson, sought custody through Defendant Fort Peck Tribal Court ("Tribal Court"). The Tribal Court granted temporary custody to Lexie's maternal grandmother pending the outcome of the custody dispute. Lexie's non-Indian father, Plaintiff Ross Atwood, then brought this action in federal district court, challenging the jurisdiction of the Tribal Court and alleging a substantive due process violation. The district court dismissed the case, relying on the domestic relations exception to subject matter jurisdiction and on Plaintiff's failure to exhaust tribal court remedies.

We hold that the "domestic relations exception," a doctrine divesting the federal courts of jurisdiction, applies only to the diversity jurisdiction statute, 28 U.S.C. § 1332, and that the district court erred by applying the domestic relations exception because federal question jurisdiction exists in this case under 28 U.S.C. § 1331. We affirm the district court's dismissal nonetheless, because Plaintiff failed to exhaust tribal court remedies.

## FACTUAL AND PROCEDURAL HISTORY

Plaintiff and Lexie's mother never married. In late 1997, when Lexie was two years old, Plaintiff filed a petition for custody in the Tribal Court. After a hearing, the Tribal Court entered a custody agreement for Lexie on February 20, 1998. That agreement granted the parents "joint legal custody of the child, with the Mother to have physical custody, and the Father having [specified visitation rights]." The agreement also stated that "the Fort Peck Tribal Court, Fort Peck Indian Reservation shall continue to have jurisdiction over this matter."

On July 16, 2005, Lexie's mother died, and Lexie was taken to stay with her maternal grandmother. Lexie's maternal aunt, Defendant Hanson, thereafter petitioned the Tribal Court for custody of Lexie.[1] On September 23, 2005, that court ordered that Lexie remain in the custody of her maternal grandmother pending the outcome of the petition. Lexie remains in the physical custody of her maternal grandmother, and the custody case remains pending before the Tribal Court.

On October 7, 2005, two weeks after the Tribal Court issued its order, the Thirteenth Judicial District Court of Mon-

---

[1]The record is not entirely clear on the status (Indian or non-Indian) of Defendant Hanson and of Lexie's maternal grandmother. Determination of those factual questions is unnecessary to the resolution of the issue before us.

tana granted immediate custody of Lexie to Plaintiff. The state court's order shows that the state court was aware of the 1998 custody agreement, but gives no indication that it was aware of the Tribal Court's recent order. According to the federal district court in this case, "[a]pparently, the Thirteenth Judicial District Court terminated enforcement upon learning of the pending tribal court matter." The parties do not dispute that finding.

On December 29, 2005, Plaintiff filed a complaint in federal district court. The complaint alleges that the Tribal Court's order violates his substantive due process right to parent his child and that Defendant Hanson lacks standing in Tribal Court. Plaintiff sought injunctive relief, specifically, an order requiring that Lexie's grandmother return Lexie to him, an order divesting the Tribal Court of jurisdiction, and an award of custody. The complaint alleges both federal question jurisdiction and diversity jurisdiction.

On March 8, 2006, the district court granted Defendants' motion to dismiss the complaint. The district court held that the domestic relations exception divested it of jurisdiction and, in the alternative, that it would choose to abstain from intervening in a domestic relations matter that was pending in a tribal court. Plaintiff timely appealed.

## STANDARD OF REVIEW

We review de novo whether we have subject matter jurisdiction. *Schnabel v. Lui*, 302 F.3d 1023, 1029 (9th Cir. 2002). We also review de novo "[w]hether exhaustion of tribal court remedies is required." *Boozer v. Wilder*, 381 F.3d 931, 934 (9th Cir. 2004).

## DISCUSSION

A. *Subject Matter Jurisdiction and the "Domestic Relations Exception"*

[1] Plaintiff's complaint alleges that "[t]he maternal aunt has no standing [in Tribal Court] to petition for custody of the child" and that the Tribal Court's order is "a substantive violation of Plaintiff's constitutional right to parent his child." In other words, Plaintiff alleges that "a tribal court has exceeded the lawful limits of its jurisdiction." *Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians*, 471 U.S. 845, 853 (1985). "Non-Indians may bring a federal common law cause of action under 28 U.S.C. § 1331 to challenge tribal court jurisdiction." *Boozer*, 381 F.3d at 934 (citing *Nat'l Farmers*, 471 U.S. at 850-53). Federal courts therefore have subject matter jurisdiction under the federal question jurisdiction statute, 28 U.S.C. § 1331, because the case arises under federal common law.[2] *Nat'l Farmers*, 471 U.S. at 853.

[2] Both in his complaint and before the district court, Plaintiff asserted subject matter jurisdiction on two grounds: federal question jurisdiction, 28 U.S.C. § 1331, and diversity jurisdiction, 28 U.S.C. § 1332. The district court expressly declined to decide "whether this Court has federal question or diversity jurisdiction" and held that, regardless, the "domestic relations exception to federal jurisdiction" applied. The Supreme Court has long recognized that, when the relief sought relates primarily to domestic relations, a doctrine referred to as the domestic relations exception divests federal courts of jurisdiction. *See, e.g.*, *In re Burrus*, 136 U.S. 586 (1890); *Barber v. Barber*, 62 U.S. (21 How.) 582 (1858).

---

[2]Because we have subject matter jurisdiction under § 1331, we need not determine whether an alternative basis for jurisdiction also exists. *See Boozer*, 381 F.3d at 934 n.2 (holding that jurisdiction exists under federal common law and declining to address the plaintiff's alternative jurisdictional theory).

Plaintiff argues that the domestic relations exception does not apply in this case, because subject matter jurisdiction exists under the federal question jurisdiction statute, § 1331, and the domestic relations exception applies only to the diversity jurisdiction statute, § 1332. We agree.

The Supreme Court discussed the nature of the domestic relations exception at length in *Ankenbrandt v. Richards*, 504 U.S. 689 (1992). The Court traced the history of the exception and concluded, first, that the exception is not of constitutional dimension. *Id.* at 695. That is, "the Constitution does not exclude domestic relations cases from the jurisdiction otherwise granted by statute to the federal courts." *Id.*

But, the Court held, the diversity jurisdiction statute does exclude such cases. In reasoning to that conclusion, the Court examined the text and history of the diversity jurisdiction statute. *Id.* at 698. The Court held that the exception derived from Congress' intent to exclude domestic relations cases from the predecessor to 28 U.S.C. § 1332. *Id.* at 700. When Congress later amended the diversity statute, it meant to leave in place the domestic relations exception. *Id.* at 700-01. The Court concluded that, in cases falling within the scope of the exception to § 1332, federal courts lack jurisdiction. *Id.* at 701-03.

**[3]** In sum, *Ankenbrandt* held that the domestic relations exception was not of constitutional dimension, but rested on Congress' intent in enacting the *diversity* jurisdiction statute, 28 U.S.C. § 1332. Although *Ankenbrandt* did not address whether the exception applies to the *federal question* jurisdiction statute, 28 U.S.C. § 1331, the Court's reasoning plainly does not apply to that statute. We therefore join the Fourth and Fifth Circuits in holding that the domestic relations exception applies only to the diversity jurisdiction statute. *See United States v. Bailey*, 115 F.3d 1222, 1231 (5th Cir. 1997); *United States v. Johnson*, 114 F.3d 476, 481 (4th Cir. 1997); *see also Flood v. Braaten*, 727 F.2d 303, 307 (3d Cir. 1984)

(reaching the same conclusion in a case pre-dating *Ankenbrandt*).

Our holding today is driven by the Supreme Court's reasoning in *Ankenbrandt*, but it also is consistent with our cases pre-dating *Ankenbrandt*. *See Csibi v. Fustos*, 670 F.2d 134, 136 n.4 (9th Cir. 1982) ("Thus, domestic relations cases are within the Article III judicial power of the federal courts, but outside the power bestowed by Congress in the diversity statute."). Of note, the First Circuit mistakenly identified the Ninth Circuit as the only circuit to hold the *opposite*: that the domestic relations exception applies to more than diversity actions. *See Mandel v. Town of Orleans*, 326 F.3d 267, 271 & n.3 (1st Cir. 2003) (citing *Thompson v. Thompson*, 798 F.2d 1547, 1558 (9th Cir. 1986) (per curiam)). We disagree with the First Circuit's characterization of *Thompson*. In that case, we looked to the policies underlying the domestic relations exception for guidance in answering a statutory interpretation question; we did not apply the exception at all. 798 F.2d at 1558. In any event, we clarify today that the domestic relations exception applies only to the diversity jurisdiction statute.

**[4]** In conclusion, subject matter jurisdiction exists in this case under § 1331 and federal common law. The domestic relations exception does not apply.

B.   *Exhaustion of Tribal Court Remedies*

**[5]** In dismissing the case, the district court also relied on the fact that Plaintiff had not exhausted tribal court remedies. Under the doctrine of exhaustion of tribal court remedies, relief may not be sought in federal court until appellate review of a pending matter in a tribal court is complete. *Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9, 17 (1987); *see also Nat'l Farmers*, 471 U.S. at 856-57 (applying the doctrine); *Boozer*, 381 F.3d at 935-37 (same). "[T]he exhaustion rule . . . [i]s 'prudential,' not jurisdictional." *Strate v. A-1 Contractors*,

520 U.S. 438, 451 (1997). As a matter of discretion, a district court may either dismiss a case or stay the action while a tribal court handles the matter. *Nat'l Farmers*, 471 U.S. at 857. Because the parties do not dispute that the custody issue is still pending before the Tribal Court, the district court properly exercised its discretion and dismissed this case due to Plaintiff's failure to exhaust tribal court remedies.

Although the Supreme Court has crafted narrow exceptions to the exhaustion rule, none applies here. There has been no showing that Defendant Hanson asserted tribal jurisdiction in bad faith or that she acted to harass Plaintiff. *Nevada v. Hicks*, 533 U.S. 353, 369 (2001). Nor can it be said that requiring exhaustion in this case "would serve no purpose other than delay." *Id.* (internal quotation marks omitted).

Finally, it is not "plain" that tribal court jurisdiction is lacking. *Id.* (citing *Strate*, 471 U.S. at 459-60 & n.14). We have equated that inquiry with whether jurisdiction is "colorable" or "plausible." *Allstate Indem. Co. v. Stump*, 191 F.3d 1071, 1075-76 (9th Cir. 1999). Here, tribal court jurisdiction almost certainly is proper and therefore unquestionably is "plausible." First, the 1998 custody agreement (the validity of which Plaintiff does not challenge) states that the Tribal Court "shall continue to have jurisdiction over this matter." Second, Plaintiff availed himself of that forum voluntarily when the original custody dispute arose in 1997, which is at least a "colorable" basis for jurisdiction, even though the current tribal court case was not initiated by Plaintiff. *See Smith v. Salish Kootenai Coll.*, 434 F.3d 1127, 1140 (9th Cir.) (en banc) ("We hold that a nonmember who knowingly enters tribal courts for the purpose of filing suit against a tribal member has, by the act of filing his claims, entered into a 'consensual relationship' with the tribe . . . ."), *cert. denied*, 126 S. Ct. 2893 (2006). Third, the suit primarily concerns Lexie, who *is* a member of the tribe. Although the rights of non-member Plaintiff are affected, it is not clear that that fact alone would strip the Tribal Court of jurisdiction.

CONCLUSION

We hold that the domestic relations exception applies only to the diversity jurisdiction statute, 28 U.S.C. § 1332. Because federal courts have jurisdiction in this case under the federal question jurisdiction statute, 28 U.S.C. § 1331, the district court erred by applying the domestic relations exception. Nonetheless, we affirm the district court's dismissal of this case because Plaintiff has not exhausted his tribal court remedies.

AFFIRMED.