**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

TIMM ADAMS,
                              *Plaintiff,*

          and

CLINGER GROWER GROUP; FUNK
GROWER GROUP; HANSEN GROWER
GROUP; JENTZCH-KEARL GROWER
GROUP,
              *Plaintiffs-Appellees,*

          v.

UNITED STATES OF AMERICA,
                              *Defendant,*

          and

E.I. DU PONT DE NEMOURS AND
COMPANY,
              *Defendant-Appellant.*

No. 10-35458

D.C. No.
4:03-cv-00049-BLW

17075

TIMM ADAMS,
                              *Plaintiff,*

          and

CLINGER GROWER GROUP; FUNK
GROWER GROUP; HANSEN GROWER
GROUP; JENTZCH-KEARL GROWER
GROUP,
                    *Plaintiffs-Appellants,*            No. 10-35592

          v.                                            D.C. No.
                                                  4:03-cv-00049-BLW
UNITED STATES OF AMERICA,
                              *Defendant,*

          and

E.I. DU PONT DE NEMOURS AND
COMPANY,
                    *Defendant-Appellee.*

TIMM ADAMS,
                                    *Plaintiff,*

             and

CLINGER GROWER GROUP; FUNK
GROWER GROUP; HANSEN GROWER
GROUP; JENTZCH-KEARL GROWER
GROUP,
                                    No. 10-35611
             *Plaintiffs-Appellees,*           D.C. No.
                                    4:03-cv-00049-BLW
             v.
                                    OPINION
UNITED STATES OF AMERICA,
             *Defendant-Appellant,*

             and

E.I. DU PONT DE NEMOURS AND
COMPANY,
                                    *Defendant.*

Appeal from the United States District Court
for the District of Idaho
B. Lynn Winmill, Chief District Judge, Presiding

Argued and Submitted
February 8, 2011—Seattle, Washington

Filed September 8, 2011

Before: Betty B. Fletcher, Richard A. Paez, and
Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Paez

**COUNSEL**

Peter C. Houtsma, Holland & Hart LLP, Denver, Colorado, Steven B. Andersen, Walter H. Bithell, Amanda K. Brails-

ford, Holland & Hart LLP, Boise, Idaho, for plaintiffs-appellees Clinger Grower Group, Funk Grower Group, Hansen Gower Group, Jentzch-Kearl Grower Group, et al.

Tony West, United States Assistant Attorney General, Wendy J. Olson, United States Attorney, Mark B. Stern, Mark R. Freeman, United States Department of Justice, Washington D.C., for defendant-appellant United States.

---

## OPINION

PAEZ, Circuit Judge:

In 1999 and 2000, the federal Bureau of Land Management ("BLM") applied the herbicide Oust to approximately 70,000 acres of federal lands in South Central Idaho in an effort to combat a devastating wildfire cycle. Wind carried some of the Oust off the federal land and onto privately owned farmland nearby. The herbicide caused significant damage to the crops on these farmlands. The Plaintiffs in this case, 134 farmers whose crops suffered as a result of the Oust applications, sued the federal government and Oust's manufacturer E.I. Du Pont De Nemours and Company ("DuPont"). The district court adopted a bellwether trial plan and selected four Bellwether Plaintiffs to resolve those issues in the case that do not depend on individual circumstances. The resolution of these issues will bind both the Bellwether and all other Plaintiffs. The district court conducted a 16-week trial involving claims against both DuPont and the government. The jury returned an advisory verdict against the federal government, and a verdict against DuPont. As required by the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2402, the district court, upon its own fact-finding and independent review of the record, rendered a verdict against the federal government. Both the jury and the district court allocated 60% of the fault to DuPont and 40% to the federal government. The government and DuPont

appealed: we resolve the government's appeal in this opinion and DuPont's appeal, No. 10-35458, in a memorandum disposition filed simultaneously with this opinion.

The government argues that jurisdiction is lacking, that the FTCA bars the "debt-based costs" that the district court awarded to Plaintiffs, and that Plaintiffs did not exhaust their administrative remedies for the crop damage they suffered in 2003 and 2004. Because we agree with the government that jurisdiction is lacking, we address only this threshold issue, and we accordingly limit our discussion of the complex facts of this case.

### *Factual Background*[1]

BLM, an agency of the Department of the Interior, manages approximately 11 million acres of public land in Idaho. Every year, wildfires burn thousands of acres of this BLM land and the BLM engages in extensive efforts to repair and rehabilitate burned rangelands. Many of the wildfires in Idaho's federal lands are fueled by cheatgrass; these fires tend to be very large and can be catastrophic.

Cheatgrass is an annual non-native plant that grows up early in the spring, dries out very early in the summer, and provides a continuous bed of fuel for wildfires. It is shallow-rooted, which leads to damaging erosion in areas where it is prevalent. Perennial vegetation, which is native to the Idaho lands, is deep-rooted and stays green longer into the season than cheatgrass. As a result, perennial vegetation is significantly more fire-resistant than cheatgrass. As part of its management duties, BLM has made it a goal to substitute perennial vegetation for cheatgrass in Idaho—if successful, this substitution would reduce the instances and severity of

---

[1]In summarizing the facts, we draw extensively on the district court's Findings of Fact and Conclusions of Law, as none of the parties have challenged those factual findings.

wildfires. During the 1980s, BLM unsuccessfully attempted to fight cheatgrass with prescribed burns, plowing, re-seeding, and seed drilling. Next, BLM tried the herbicide Roundup, which only sometimes killed the cheatgrass. Roundup is a post-emergent herbicide, meaning that it has to be sprayed on green vegetation in order to kill the vegetation. Roundup becomes almost entirely inactive once it hits soil. In 1987, after Roundup had proven only somewhat useful in combating cheatgrass, a BLM ecologist started looking at other herbicides that might be more successful. Oust was one of these herbicides.

Oust is manufactured by DuPont and is registered under the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA") with the Environmental Protection Agency ("EPA"). Oust is a commercial name for the chemical compound sulfometuron methyl, which belongs to the sulfonylureas chemical family. Sulfonylureas chemicals inhibit amino lactase synthase and are known for their high potency in low doses as compared to other herbicides. Oust kills or injures crops by affecting a plant's root system, preventing it from taking up water and nutrients from the soil and causing drought-like symptoms. Oust is not labeled for any use on agricultural crops.

In 1999 and 2000, there were particularly catastrophic wildfires in Idaho and BLM developed fire rehabilitation plans which included the use of Oust on tens of thousands of acres. Beginning in Spring 2000, farmers near the application sites started to notice problems with their crops. In Spring 2001, again, farmers saw damage to their sugar beets, potatoes, grain, and other crops; this time the damage was more substantial. The Idaho State Department of Agriculture ("ISDA") and private crop consultants initiated investigations. Both the ISDA and the private consultants concluded that the crop damage occurred because severe winds caused Oust treated soil particles to move off BLM targets and onto neighboring crops.

## *Procedural Background*

One hundred and thirty-four of the farmers whose crops were damaged by Oust filed administrative FTCA claims with the Department of Interior in April 2002. The farmers alleged that "BLM's negligent and otherwise wrongful conduct killed or seriously injured the claimants' 2000 and 2001 crops. Further, it contaminated the claimants' croplands. As a result of this contamination, Oust will continue to damage future crops until it dissipates." The Department of Interior denied Plaintiffs' administrative claims in letters dated August 5, 2002.

The FTCA requires government agencies to send administrative denial letters by certified or registered mail. 28 U.S.C. § 2401(b). Here, BLM opted to send the denial letters by certified mail. Because of the large size of the mailing, BLM used Firm Mailing Sheets instead of preparing each letter individually. This method of certified mailing involves using United States Postal Service ("USPS") Forms 3800 and 3877. BLM inadvertently left two of the farmers off of the Firm Mailing Sheets. For these two farmers, BLM prepared their denial letters as individual certified mailings using only Form 3800. After a BLM employee prepared the administrative denial mailing on August 5, 2002, she took the letters to BLM's delivery and pick up door for USPS services. The USPS collector picked up all of the letters the same day and USPS treated the letters as certified mail.

Plaintiffs filed this lawsuit in federal court on February 6, 2003—six months and one day after the date BLM mailed the administrative denial letters. The FTCA affords claimants only six months after the government denies their administrative claim to file a lawsuit in federal court. 28 U.S.C. § 2401(b). The district court denied BLM's motion to dismiss the case for lack of subject matter jurisdiction, holding that the government "may not obtain the benefits of [the] limitations period" because it "did not obtain a postmark from the Post Office to establish the mailing date."

As noted, the district court proceeded to adopt a bellwether trial plan and selected four Bellwether Plaintiffs. The bell-wether jury selection began May 4, 2009. A nine person jury returned a unanimous special verdict on August 24, 2009. The special verdict form contained questions as to BLM's liability for the following:

- Negligence in selecting Oust and/or the application sites (Yes);[2]

- Negligence based on a violation of the Idaho Pesticide and Chemigation Act (No);

- Negligence based on a violation of FIFRA (No);

- Violation of the Idaho Nuisance Statute (Yes);

- Trespass (Yes);

- Negligence in supervising the contracted applicators of Oust (No).

The special verdict form contained questions as to BLM's proximate causation for the following:

- Damage to Bellwether Plaintiff Clinger's sugar beets in 2000-2002, and wheat in 2001 (Yes);

- Damage to Bellwether Plaintiff Funk's sugar beets in 2001-2002, potatoes in 2001-2003, corn in 2001-2003, wheat in 2001-2003, and barley in 2001-2002 (Yes);

- Damage to Bellwether Plaintiff Jentzsch-Kearl's

---

[2]The parenthetical notation represents the jury's advisory answer as indicated on the special verdict form.

sugar beets in 2000-2002 and 2004, potatoes in 2000-2002 (Yes);

• Damage to Bellwether Plaintiff Hansen's sugar beets in 2000-2002, potatoes in 2000-2004, and wheat in 2001-2002 (Yes).

The jury's verdict as to BLM was advisory, because the FTCA requires the court to be the fact finder for claims against the government. 28 U.S.C. § 2402. The jury allocated 60% fault to DuPont and 40% fault to BLM. The district court also concluded that the defendants' respective fault was 60% as to DuPont and 40% as to BLM. The total damages for all four Bellwether Plaintiffs were nearly $17 million. DuPont and BLM timely appealed.

After oral argument, we issued a limited remand to the district court. We instructed the district court to determine "[w]hether the United States sent administrative denial letters to Plaintiffs by a method that qualifies as certified mail." We explained that,

> [a] limited remand is warranted because the district court failed to resolve material factual issues relating to whether the United States mailed administrative denial letters to Plaintiffs by a method that qualifies as certified mail. The court reasoned that Congress intended to require that the United States obtain a postmarked sender's receipt when it sends Federal Tort Claims Act administrative denial letters by certified mail, which the government did not do here. The district court's interpretation of 28 U.S.C. § 2401(b) is inconsistent with the statute's plain text and is not supported by any case law.

In response, the district court filed Findings of Fact and Conclusions of Law. The district court concluded, as a matter of law, that "the only option for mailing certified mail using

form 3877 is to mail the letters from a post office, branch, or station, or by giving it to a rural carrier." As a result, the district court concluded that the denial letters for which BLM used Form 3877 and that BLM's USPS collector picked up from the BLM mail room were not sent by a method that qualified as certified mail. Thereafter, the parties filed supplemental briefs addressing the district court's ruling on remand.[3]

"We review de novo whether we have subject matter jurisdiction." *Atwood v. Fort Peck Tribal Court Assiniboine*, 513 F.3d 943, 946 (9th Cir. 2008).

## *Discussion*

BLM argues that we lack subject matter jurisdiction over Plaintiffs' FTCA claims for two reasons. First, BLM argues that Plaintiffs filed their lawsuit one day after the FTCA's statute of limitations had run, forever barring their claims. Second, BLM argues that the discretionary function exception, which provides immunity against FTCA claims even where a federal agency abuses its discretion, so long as the abuse occurs in the performance of non-mandatory duties, bars Plaintiffs' claims. Because we conclude that Plaintiffs' claims are barred by the FTCA statute of limitations, we do not address BLM's discretionary function argument.

**[1]** When the appropriate federal agency denies an administrative FTCA claim, the claimant has six months, from the date when the denial was mailed by certified or registered mail, to file a complaint in federal court. 28 U.S.C. § 2401(b). After the expiration of the six months, the "tort claim against the United States shall be forever barred." *Id.* The FTCA's statute of limitations is jurisdictional and not subject to equitable tolling or estoppel. *Marley v. United States,* 567 F.3d 1030, 1038 (9th Cir. 2009), *cert. denied,* 130 S. Ct. 796

---

[3]We thank both the district court and the parties for their timely work in response to our remand, all of which we found useful.

(2009). Thus, FTCA claimants must strictly adhere to the statute of limitations or lose the right to invoke federal jurisdiction.

**[2]** The government, however, must also strictly comply with § 2401(b)'s requirement that administrative denial letters be sent by certified or registered mail. *See* 28 U.S.C. § 2675(a) (to satisfy administrative exhaustion before filing an FTCA claim in federal court a claimant's "claim shall have been finally denied by the agency in writing and sent by certified or registered mail."). We, along with two of our sister circuits, have indicated that the government cannot invoke the FTCA statute of limitations if it has failed to comply with the certified or registered mailing requirement—even if a claimant actually received the notice of denial. *Raddatz v. United States*, 750 F.2d 791, 797 (9th Cir. 1984); *Flory v. United States*, 138 F.3d 157, 160 (5th Cir. 1998); *Miller v. United States*, 741 F.2d 148, 150 (7th Cir. 1984). Thus, we treat the government's compliance with the certified or registered mailing requirement in a manner similar to what we demand of claimants' compliance with the six month requirement.

**[3]** Here, BLM denied Plaintiffs' administrative claims in "certified" letters bearing the date August 5, 2002. Plaintiffs filed their complaint on February 6, 2003—six months and one day after the date which appears on the letters denying the administrative claims. Therefore, if the administrative denial letters triggered the FTCA statute of limitations, Plaintiffs' claims are "forever barred." 28 U.S.C. § 2401(b). The district court concluded that the government complied with the statute's certified mailing requirement—thereby triggering the statute of limitations—for only three of the denial letters. Having concluded that the government did not mail the rest of the denial letters by a method that qualified as certified mail, the district court rejected BLM's argument that the FTCA's statute of limitations bars the claims of those 132 Plaintiffs. We agree with the district court, drawing on *Raddatz, Flory,* and *Miller*, that if BLM failed to strictly comply

with the statute, it cannot invoke the benefit of the statute of limitations to shield itself against Plaintiffs' claims. We do not, however, agree with the district court that, in this instance, BLM's mailing failed to trigger the statute of limitations. As we explain below, BLM mailed all the letters by a method that qualified as certified mail.

Whether BLM mailed the denial letters by a method that qualified as certified mail is a mixed question of law and fact. We review de novo the district court's legal conclusion that the method used by BLM to mail all but three of the denial letters does not qualify as certified mail. In deciding this legal question, we look to the U.S. Postal Service regulations. We review the district court's factual findings for clear error.

[4] USPS Form 3800 is the form commonly associated with certified mail. *See* Domestic Mail Manual ("DMM") Exhibit 3.3.3.[4] Form 3800 has two parts. *Id.* The left part contains a bar code and a 20 digit identifying number and reads "Certified Mail" vertically from bottom to top. *Id.* This left part is perforated on the right side and, once the backing is removed, is sticky on the back. The DMM states that "Certified Mail must bear a barcoded green Form 3800 [the left side]." DMM § 503.3.3.3.[5]

The right part of Form 3800 bears the title "U.S. Postal Service Certified Mail Receipt" horizontally across the top and it contains the same 20 digit identifying number that appears on the sticky left part. DMM Exhibit 3.3.3. This receipt contains space for a customer to fill in, among other information, postage, certified fee, and the name and address of the certified mail's recipient. *Id.* This receipt does not get attached to

---

[4]Form 3800, as it appears in the DMM at Exhibit 3.3.3., is included as an Appendix to this opinion.

[5]In 39 C.F.R. § 111.1 "the U.S. Postal Service hereby incorporates by reference in this part, the Mailing Standards of the United States Postal Service, Domestic Mail Manual."

the piece of mail that is sent. There are two things a mailer can do with this receipt. First, if a mailer wants a postmarked sender's receipt, the DMM instructs the mailer to "attach the Certified Mail sticker [the left part of Form 3800] to the address side of the article and present the article and the completed receipt [the right part of Form 3800] to the USPS employee, who then round-dates the receipt to show when the article was accepted." DMM § 503.3.3.5(d). If the mailer does not want a postmarked sender's receipt, the DMM instructs the mailer to "attach the 'Certified Mail' sticker [the left part of Form 3800] to the address side of the article, detach the receipt [the right part of Form 3800], and mail the article. Mark the receipt to show the date." This mailing can be done from a "Post Office, branch, or station or give it to a rural carrier. Certified Mail may also be deposited in a Post Office maildrop, a street letterbox, a nonpersonnel unit, or any other receptacle for First-Class Mail." DMM § 503.3.3.1.

Thus, if a mailer chooses not to obtain a postmarked sender's receipt, USPS never sees or checks the sender's receipt— the right part of Form 3800—and the mail proceeds as certified mail with the left barcoded part of Form 3800.

**[5]** The DMM specifies that mailers can use Form 3877 (or equivalent privately made Firm Sheets) "*in lieu* of the receipt portion of Form 3800." DMM § 503.3.3.6 (emphasis added). Even if a mailer uses Form 3877 for the sender's receipt, the mailer must still use the barcoded left part of Form 3800 for every piece of mail. DMM § 503.3.3.3. Because Form 3877 is used "in lieu" of the sender's receipt portion of Form 3800, it follows that, just as a postmark is optional on a Form 3800 sender's receipt, a postmark is optional on a Form 3877 sender's receipt. Moreover, the DMM states, using conditional language, that "*[i]f* the mailer wants the firm sheets receipted by the USPS, the mailer must present the books with the articles to be mailed at a Post Office. The sheets of the books become the mailer's receipts." DMM § 503.3.3.6 (emphasis added). Thus, just like a piece of certified mail sent using both

the left and right parts of Form 3800, USPS may never see Form 3877. The individual pieces of mail, however, will be processed through USPS as "certified" so long as they contain the left barcoded part of Form 3800 and the sender pays proper postage.

**[6]** The envelopes containing the administrative denial letters in this case bear the left barcoded part of Form 3800. Plaintiffs do not contend, and no evidence has been offered, that BLM did not pay proper certified mail postage for the denial letters. Plaintiffs now simply claim, as the district court concluded, that the mailing was not done by a method that qualified as certified mail because BLM mailed the Form 3877 letters from its mailroom and USPS did not inspect the letters or postmark the Form 3877 receipts before the items entered the mail. In light of the above discussion, we do not find Plaintiffs' argument persuasive. Because the envelopes containing the denial letters bear the necessary left barcoded part of Form 3800 and BLM paid proper postage, we conclude that BLM mailed the letters by a method that qualified as certified mail.[6] Therefore, Plaintiffs filed this lawsuit one day late and federal subject matter jurisdiction does not exist for any of their FTCA claims. The district court erred by not dismissing the claims against the federal government.

### *Conclusion*

**[7]** For the foregoing reasons, we hold that Plaintiffs' FTCA claims are barred by the statute of limitations and that we lack subject matter jurisdiction over those claims.

**DISMISSED.**

---

[6]We need not decide whether substantial compliance with the DMM's certified mailing requirements would trigger the FTCA's statute of limitations.

*Appendix:*

Domestic Mail Manual Exhibit 3.3.3.
Form 3800

